817 F.2d 499
 1987-1 Trade Cases 67,570, 1987 Copr.L.Dec. P 26,104,
7 Fed.R.Serv.3d 867, 2 U.S.P.Q.2d 1920
 David P. CAMPBELL, Plaintiff-Appellant,
v.
The BOARD OF TRUSTEES OF the LELAND STANFORD JUNIOR
UNIVERSITY, a body having corporate powers under the laws of
the State of California, dba Stanford University Press,
Consulting Psychologist Press, Inc., a California
corporation, Defendant-Appellee.
 No. 85-1678.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 12, 1985.
Decided May 13, 1987.
 
 Joshua Tropper, Palo Alto, Cal., for plaintiff-appellant.
 Lynn H. Pashahow, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before TANG and BRUNETTI, Circuit Judges, and CURTIS,* District Judge.
 BRUNETTI, Circuit Judge:
 
 
 1
 David P. Campbell appeals the district court's order granting summary judgment in favor of the Board of Trustees of the Leland Stanford Junior University ("Stanford") that Stanford did not breach certain provisions of its contract with Campbell. Campbell also appeals the district court's summary judgment order that the covenant not to compete in the Campbell-Stanford contract is not void as against public policy. Finally, Campbell argues that the district court abused its discretion by denying his post-summary judgment motion to amend his complaint pursuant to Fed.R.Civ.P. 15(b).FACTS AND PROCEEDINGS BELOW
 
 
 2
 In the 1920s, Dr. E.K. Strong, Jr., developed a psychological test for career guidance counseling called the Strong Vocational Interest Blank ("SVIB"). In 1927 Dr. Strong entered into an agreement with Stanford, whereby Dr. Strong assigned to Stanford the relevant copyrights. Thereafter, Dr. David P. Campbell and others, revised and further developed the test. The current edition of the test is identified as the Strong-Campbell Interest Inventory ("SCII").
 
 
 3
 In 1957 Stanford entered into an agreement with Consulting Psychologists Press ("CPP") under which CPP became the exclusive distributor of the SCII and all other psychological tests owned by Stanford. On June 16, 1966, Stanford and CPP terminated their 1957 agreement and simultaneously entered into a new agreement which granted CPP a nonexclusive license for the SCII. Under an earlier agreement, CPP maintained an exclusive license for other psychological tests owned by Stanford.
 
 
 4
 Several days after the June 16, 1966 Stanford-CPP contract was made, Campbell and Stanford entered into two of the principal contracts involved in the instant action. The contracts provided that Campbell would make certain revisions of the SCII. Campbell continued to revise the SCII until 1974, when he left his employment at the University of Minnesota and became a permanent fellow of the Center for Creative Leadership in North Carolina. Campbell also worked with National Computer Systems, Inc. ("NCS") as director, consultant, and employee. At the time, NCS was a principal competitor of CPP in the distribution of vocational interest measurement and other psychological tests.
 
 
 5
 After Campbell left the University of Minnesota, Dr. JoIda Hansen took over the responsibility for the scientific development of the SCII. By that time, Campbell enjoyed an international reputation in the psychological community for his extensive work with the SCII.
 
 
 6
 In March 1983, Stanford and CPP entered into a new contract that gave CPP an exclusive license with regard to certain publication and marketing rights. The 1983 Stanford-CPP agreement also required CPP to assume certain responsibilities for future research and development of the SCII.
 
 
 7
 Campbell brought the instant action seeking a declaratory judgment and damages based on claims that Stanford breached various provisions of the Stanford-Campbell contracts. The parties filed cross-motions for summary judgment prior to trial. The district court granted Stanford's motion. Campbell filed various post-judgment motions, including a Rule 15(b) motion to amend his complaint. This appeal followed the district court's denial of these motions.
 
 
 8
 * THE SUMMARY JUDGMENT ORDER
 
 
 9
 A grant of summary judgment is reviewed de novo. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). This court must therefore determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986). California law governs the substantive issues of state law in this diversity action. Churchill v. F/V Fjord, 739 F.2d 1395, 1397 (9th Cir.1984). We turn first to the district court's determination that the anticompetition clause contained in the Campbell-Stanford contract is valid under California law.
 
 A. COVENANT NOT TO COMPETE
 
 10
 Campbell's complaint petitions the court for declaratory judgment that the clause in which Campbell promises "to refrain from preparing or causing to publish in his name or otherwise, without the consent in writing of [Stanford], any similar work or anything that may injure the sale of [the SCII test]" is void. Campbell argues that the clause is void under Cal.Bus. & Prof.Code Sec. 16600 (West 1964), which provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." The only statutory exceptions to this rule are irrelevant to this case. In the most recent analysis of the statute, the California Court of Appeal concluded that it bans any and all restraints:
 
 
 11
 Although at common law and in many states, a restraint on the practice of a trade or occupation, even as applied to a former employee, is valid if reasonable [citing authorities], the so-called rule of reasonableness was rejected by this state in 1872. That year, Civil Code sections 1673 through 1675--the predecessor sections to Business and Professions Code sections 16600 through 16602--were enacted. At least since 1872, a non-competition agreement has been void unless specifically authorized by sections 16601 or 16602. (See Note (1953), 26 S.Cal.L.Rev. 208, 209.)
 
 
 12
 Bosley Medical Group v. Abramson, M.D., 161 Cal.App.3d 284, 288, 207 Cal.Rptr. 477, 480 (1984).
 
 
 13
 The district court below cited Monogram Industries v. Sar Industries, 64 Cal.App.3d 692, 698, 134 Cal.Rptr. 714, 718-19 (1976), for the proposition that the California courts imply a reasonableness standard into sections 16600 to 16602 except in the employer-employee context. The court found also that the covenant not to compete in this case is "inherently reasonable."
 
 
 14
 The court's reliance on Monogram is misplaced. Indeed, the case supports Campbell's position that restraints of trade are absolutely prohibited unless specifically authorized by statute. 64 Cal.App.3d at 697, 134 Cal.Rptr. at 718. The case did apply the common law rule of reasonableness to determine whether the covenant not to compete was valid, but it did so only after first finding that the contract involved the sale of a business so that the section 16601 exception specifically authorized an anticompetition clause. Monogram therefore holds that even clauses authorized by section 16601 are enforceable only "to the extent that it is reasonable and necessary in terms of time, activity and territory to protect the buyer's interest." 64 Cal.App.3d at 698, 134 Cal.Rptr. at 718.
 
 
 15
 Even though the California Legislature rejected the common-law rule that "reasonable" restraints of trade are generally enforceable, it did not make all restrictions unenforceable. Section 16600 only makes illegal those restraints which preclude one from engaging in a lawful profession, trade, or business. Thus, the court in Boughton v. Socony Mobil Oil Co., 231 Cal.App.2d 188, 192, 41 Cal.Rptr. 714, 716 (1964), stated that
 
 
 16
 while the cases are uniform in refusing to enforce a contract wherein one is restrained from pursuing an entire business, trade, or profession, as falling within the ambit of section 16600 [citing cases], where one is barred from pursuing only a small or limited part of the business, trade or profession, the contract has been upheld as valid.
 
 
 17
 (Emphasis added). The problem in this case, then, is defining Dr. Campbell's profession and determining whether he is precluded from pursuing that profession.
 
 
 18
 California courts have defined "profession, trade or business" narrowly. For example, in Summerhays v. Scheu, 10 Cal.App.2d 574, 52 P.2d 512 (1936), the plaintiff claimed that the defendant orally agreed to "never again enter into the orchard heater business at any place, especially in California." The court held that the contract was void under the statutory predecessor to section 16600 as a contract in restraint of trade. Id. at 575, 52 P.2d at 513.
 
 
 19
 In Hunter v. Superior Court, 36 Cal.App.2d 100, 97 P.2d 492 (1939), a machine designer had developed the plans for a machine to help manufacture venetian blinds. The contract signed by the designer and the manufacturer granted the manufacturer an exclusive right to produce the machine. The contract provided that the designer would not "manufacture any such or similar machines or any machines or tools" to be used in making venetian blinds for anyone other than the manufacturer which was a party to the contract. The court held that the clause was void as violative of the predecessor to section 16600. Even though the machine designer was free to design other machines, the court found that the clause unlawfully restrained the designer's right to exercise his profession. Id. at 114-15, 97 P.2d at 500.
 
 
 20
 In this case, Stanford would have us say that Campbell's "profession" is psychology generally, and that the competing works provision at issue does not entirely restrain him from pursuing his occupation as a psychologist. The California Court of Appeal precedents discussed above, however, compel us to define "profession" more narrowly. A person's "profession" under section 16600 is not so expansive to include all work for which he is qualified. One may, by devoting all of his energy to a specialty within a traditional profession, limit his "profession, trade, or business" under section 16600 to that specialty. Thus, even though Campbell may hold a license to practice psychology generally, which includes work outside the field of "preparation of vocational interest exams," Dr. Campbell alleged that these tests have become his life's work, that he has attained a position of worldwide prominence in the preparation of the tests, and that the competing works provision would completely preclude him from preparing those tests. Dr. Campbell is entitled to a trial to prove these disputed facts, and if successful, establish that he is completely restrained from "the preparation of vocational interest exams," his "profession, trade, or business" within the meaning of section 16600. We therefore reverse the district court's summary judgment in favor of Stanford on this issue and remand for a trial in which Dr. Campbell can establish preclusion from his "profession."
 
 
 21
 Our decision today is not contrary to King v. Gerold, 109 Cal.App.2d 316, 240 P.2d 710 (1952). Stanford points to that case as implying that "profession" should be broadly defined under section 16600. A trailer designer in King granted a license to a trailer manufacturer to produce a particular trailer model. The parties agreed that if the license was not renewed on its initial expiration date, the manufacturer would "cease to produce said trailer for any purpose whatsoever." Even though the license was not renewed, the manufacturer persisted in producing the trailer and the designer sued to enforce the contract.
 
 
 22
 The King court upheld the validity of the provision, rejecting the manufacturer's argument that it was an illegal restraint under section 16600. According to the court, the manufacturer was not prohibited from carrying on its lawful business of manufacturing trailers, but rather was only barred from producing one particular model. 109 Cal.App.2d at 318, 240 P.2d at 712. That case is not like this one since the manufacturer was not restrained, as is Campbell, from producing competing models. The King opinion even relies on this difference to distinguish it from Summerhays v. Scheu, supra. Id.[1] King is thus consistent with our holding in this case.
 
 B. TRANSFER OF INTEREST
 
 23
 The Campbell-Stanford contracts contain a clause providing "that neither party to this contract shall transfer his interest therein, except as a whole and not without written assent of the other party thereto." Campbell did not consent to Stanford's March 1983 contract granting exclusive licenses with CPP. The issue, then, is whether Stanford transferred all or part of its interest in the Campbell-Stanford agreement to CPP.
 
 
 24
 The district court correctly concluded that "the only interest created by the contracts that Stanford could possibly transfer is its ownership of the copyrights to the SCII...." The Stanford-CPP contract specifically states that Stanford shall remain the "sole and exclusive proprietor" of the copyrights. The district court relied on this language to reach the conclusion that no interest in the copyrights had been transferred. We disagree.
 
 
 25
 Although purporting to retain "ownership" of the copyrights, Stanford transferred important rights to CPP. Stanford gave CPP an "exclusive license to market, administer, and sell" the SCII "throughout the world." The essence of the property interest created by the Campbell-Stanford contract is a monopoly on the use of the SCII. Stanford clearly transferred part of this property interest monopoly to CPP in the form of an exclusive license.
 
 
 26
 The property interest at issue here came into existence because of the federal copyright laws. We therefore agree with Campbell that the Copyright Act of 1976 is relevant to disputes involving ownership and transfer of the property interests. "Copyright ownership" includes the exclusive rights to reproduce, distribute copies, display, and make derivative works of the copyrighted work. 17 U.S.C. Sec. 106 (1983). Section 101 of the Act defines a "transfer of copyright ownership" to include a grant of an exclusive license to any of these enumerated rights, even if the license is limited in time or place of effect. Furthermore, section 201 provides:
 
 
 27
 (d) Transfer of Ownership
 
 
 28
 (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law....
 
 
 29
 (2) Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all the protection and remedies accorded to the copyright owner by this title.
 
 
 30
 (Emphasis added). Section 501 gives the legal or beneficial owners of any of the section 106 exclusive rights the power to sue for infringement. Thus, CPP, as exclusive transferee and owner of several of the section 106 exclusive rights has the power to sue those who infringe on its rights. This ability to resort to the courts to enforce exclusive rights is the cornerstone of the copyright property interest.[2]
 
 
 31
 We reject Stanford's argument that the Act could not govern the Campbell-Stanford contract since it was not in existence when Campbell agreed to transfer his copyright to Stanford. We are aware of the rule that a contract should be interpreted according to the intent of the parties when the agreement was made. Jacobs v. Freeman, 104 Cal.App.3d 177, 188, 163 Cal.Rptr. 680, 685 (1980); Thomas v. Buttress & McClellan, Inc., 141 Cal.App.2d 812, 816, 297 P.2d 768, 772 (1956). See also Cal.Civ.Code Sec. 1643 (West 1987). The intent of the parties to the Campbell-Stanford contract when it was made was to transfer ownership of the copyrights in the tests to Stanford. The scope of that property interest so transferred is now governed by the current Copyright Act. In fact, Congress has provided that all existing copyright interests are governed exclusively by that statute. 17 U.S.C. Sec. 301.
 
 
 32
 Because we conclude that the grant of an exclusive license to CPP of some of the exclusive copyright rights constitutes a prohibited transfer under the Stanford-Campbell contract, we reverse the district court's contrary holding.
 
 C. ESTABLISHED PRACTICE CLAUSE
 
 33
 Campbell also asserts that Stanford breached the "established practice" provision, which provides that Stanford agrees:
 
 
 34
 To manufacture, publish and market the WORK in such style as may accord with the established practice of the Publisher and in such manner (including price, title, date of publication, discounts, form and kind of advertising, number and distribution of free copies) as in its judgment best meets the requirements of the market.
 
 
 35
 Campbell argues that Stanford breached the provision by (1) delegating the responsibility for development of the test to a commercial enterprise, and (2) granting CPP the exclusive distribution license in 1983.
 
 
 36
 We affirm the district court's summary judgment in favor of Stanford on this issue. The district court properly held that the clause is related only to marketing and not to research and development of the SCII. Furthermore, undisputed facts establish that the exclusive license was consistent with Stanford's established practice.
 
 1. Scope of the Established Practice Clause
 
 37
 Rules governing the interpretation of contracts in California require that the entire contract be considered as a whole to give meaning and effect to every part. Cal.Civ.Code Sec. 1641 (West 1987). Campbell argues that the terms "manufacture" and "publish" must be defined in terms of research and development of the SCII. But the established-practice clause provides a nonexclusive list of examples to aid in defining the publisher's duty under that provision. The publisher's duty to manufacture, publish and market is defined in terms of the publisher's decisions regarding price, title, date of publication, discounts, form and type of advertising, and the number and distribution of free copies. These examples strongly imply that the terms "manufacture" and "publish" literally refer to the physical production and distribution of the final product, not to prepublication research and development.
 
 
 38
 This view is bolstered by the existence of a separate provision that expressly treats the issue of research and development for the SCII. Paragraph six of the 1966 contract contains a description of Campbell's duties to update and revise the SCII. The clause also allows Stanford to employ others to continue the work if Campbell is unable or unwilling to do so. This provision suggests that Stanford enjoys much greater latitude than indicated by Campbell in its selection of a suitable entity to carry on the research and development of SCII.
 
 
 39
 For these reasons, we think the district court properly interpreted the clause to relate only to marketing. We turn now to the issue whether Stanford changed its "established" marketing "practice."
 
 
 40
 2. Definition of "Established Practice"
 
 
 41
 Campbell claims that Stanford's grant of an exclusive marketing license to CPP is contrary to its "established practice" of granting only nonexclusive licenses in the SCII. This practice of granting only nonexclusive licenses was established, says Campbell, because Stanford substituted a non-exclusive license for a preexisting exclusive license just days before entering into the Campbell-Stanford contract.
 
 
 42
 Campbell's definition of the phrase "established practice" is unreasonably narrow. Contract terms must be defined in light of the parties' intent at the time the contract was entered. Cal.Civ.Code Sec. 1636 (West 1985). It is undisputed that CPP possessed an exclusive distribution license for the SCII's predecessor and all other psychological tests from 1957 until June 16, 1966, the date when Stanford and CPP agreed to terminate the earlier contract and institute an agreement granting CPP a non-exclusive license for the Strong Interest Inventory Test. CPP reacquired exclusive licenses for the other psychological tests. The fact that Stanford and CPP substituted one nonexclusive license for an exclusive one days before the Campbell-Stanford contract is not a reasonable ground for disregarding the earlier practices established by multiple licensing agreements. The district court's decision on this issue is therefore affirmed.
 
 II
 CAMPBELL'S RULE 15(B) MOTION TO AMEND
 
 43
 Although the district court rejected Campbell's claim that Stanford breached the established practice clause by allowing the continued research for SCII to fall into non-academic hands, the court stated that it was sympathetic to Campbell's concerns. The court speculated that the outcome might be different if the plaintiff had alleged a breach of the implied covenant of good faith and fair dealing.
 
 
 44
 Campbell moved to amend his complaint ostensibly "to conform to the evidence presented in this case by adding a cause of action for breach of the covenant of good faith and fair dealing." The district court denied the motion for lack of express or implied consent by the parties to try the issue.
 
 
 45
 A district court's order denying a motion to amend pleadings under Fed.R.Civ.P. 15(a) is reviewed for an abuse of discretion. Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau, 701 F.2d 1276, 1292 (9th Cir.), cert. denied, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983). We apply the same standard in this case. Campbell claims the district court abused its discretion in denying his motion. We disagree and affirm.
 
 
 46
 Fed.R.Civ.P. 15(b) provides in part that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The purpose of Rule 15(b) is to allow an amendment of the pleadings to bring them in line with the actual issues upon which the case was tried. 3 J. Moore, Moore's Federal Practice p 15.13 (2d ed. 1985). An amendment will be proper only if it is found that the parties either expressly or impliedly consented for a trial of the issues not raised in the pleadings. Id.
 
 
 47
 Campbell argues that the parties impliedly consented to the introduction of the issue of Stanford's breach of a covenant of good faith and fair dealing because Stanford failed to object to the introduction of evidence that, according to Campbell, "fully apprised" Stanford that the issue was to be tried. While it is true that a party's failure to object to evidence regarding an unpleaded issue may be evidence of implied consent to a trial of the issue, it must appear that the party understood the evidence was introduced to prove the unpleaded issue. Id. See also M.B.I. Motor Co. v. Lotus/East, Inc., 506 F.2d 709, 711-12 (6th Cir.1974). The evidence that Campbell claims clearly related to the issue of Stanford's breach of a covenant of good faith consists of facts concerning (1) Stanford's attempt to conceal from Campbell its intention to make CPP responsible for research and development of the test; (2) Stanford's refusal to disclose to Campbell the details of the 1983 Stanford-CPP contract; and (3) Stanford's intention to prevent Campbell from further work on similar tests.
 
 
 48
 There is no indication that by failing to object to the admission of this evidence, Stanford recognized the good-faith issue or that it thereby consented to a trial of the claim. Indeed, this evidence only inferentially supports Campbell's unpleaded claim. Because Rule 15(b) does not permit amendments to include issues which are only inferentially suggested by incidental evidence in the record, Stanford's failure to object to the admission of this evidence does not support a finding of implied consent. See Consolidated Data Terminals v. Applied Digital Data Systems, Inc., 708 F.2d 385, 396 (9th Cir.1983).
 
 
 49
 Aluminum Co. of America v. Admiral Merchants Motor Freight, Inc., 337 F.Supp. 674 (N.D.Ill.1972), aff'd 486 F.2d 717 (7th Cir.), cert. denied, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973) ("ALCOA"), does not help Campbell's cause. In that case, the court allowed a Rule 15(b) amendment following an order granting summary judgment against the moving party. But the court there found that the unpleaded issue had been argued by the parties in their motions for summary judgment and that the parties "devoted a substantial portion of their briefs" to the issue. Id. at 683-84. Because the issue of Stanford's breach of a covenant of good faith is only inferred from incidental evidence in the record, ALCOA is inapposite.
 
 
 50
 Finally, there is no evidence to suggest that Campbell introduced the evidence with an intent to establish a breach of the good faith covenant. Campbell admitted that he purposefully elected not to raise the issue before the trial court because "it appeared unnecessary in light of Stanford's breach of express covenants against transfer of interest and against departure from established practices." Campbell could not consistently claim later that he intentionally introduced the evidence to support the bad faith claim and that Stanford knowingly acquiesced. For all of these reasons, we hold that the district court did not commit a clear error of judgment nor did he abuse his discretion in denying the motion to amend.
 
 
 51
 The case is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this decision.
 
 
 
 *
 Honorable Jesse W. Curtis, Senior District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The King court also based its holding on the rationale that a licensee of a design for a limited period may not use section 16600 to extend the term of the license into perpetuity. The court determined that, even if the contract at issue had not contained the clause not to produce the trailers after the expiration of the license, the manufacturer was nevertheless impliedly barred from producing the trailer after the six months since the license was limited to the duration of the contract term. 109 Cal.App.2d at 318, 240 P.2d at 712
 
 
 [2]
 Even if the Copyright Act of 1976 does not apply, the parties to the Campbell-Stanford contract must have contemplated that the exclusive license conveyed some "interest" in the copyright to CPP. Under the prior copyright acts, as well as the current Act, an exclusive licensee has standing to sue for infringement, provided he joins the legal owner as a party. E.g., Russell v. Price, 448 F.Supp. 303, 305 (C.D.Cal.1977), aff'd 612 F.2d 1123 (9th Cir.1979), cert. denied, 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980); Ed Brawley, Inc. v. Gaffney, 399 F.Supp. 115, 116 (N.D.Cal.1975); Droke House Publishers, Inc. v. Aladdin Distrib. Corp., 360 F.Supp. 311, 312 (N.D.Ga.1973)