NEVADA VTN, a Nevada corporation, dba VTN Nevada, Plaintiff-Appellant,

v.

GENERAL INSURANCE COMPANY OF AMERICA, Defendant-Appellee.

No. 86–2258.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 17, 1987.

Decided Dec. 15, 1987.

Richard D. Young, Las Vegas, Nev., for plaintiff-appellant.

John L. Thorndal, Las Vegas, Nev., for defendant-appellee.

Before KENNEDY, FERGUSON and WIGGINS, Circuit Judges.

FERGUSON, Circuit Judge:

Nevada VTN appeals the district court's grant of summary judgment for Nevada VTN's insurance carrier, General Insurance Company of America (Safeco). Nevada VTN claims that Safeco breached its duty to defend two suits filed against VTN and Safeco to overturn a stipulated judgment on the basis of fraud. Finding that the litigation that gave rise to the stipulated judgment created a duty to defend under the insurance agreement, and that the duty to defend extends to challenges to the stipulated judgment, we reverse the district court.

## I

In 1970, a small plane owned by the Voorhees–Trindle Flying Club crashed upon return from a bachelor party.[1] All those aboard were killed. The passengers were the President of Nevada VTN, two members of the flying club not employed by Nevada VTN, and three clients of Nevada VTN. The families of the VTN clients brought suit in Nevada and California against VTN for wrongful death.

The complaints alleged that several defendants were liable for the deaths. The most important allegations for purposes of this action were that VTN had negligently supervised its corporate employees, and negligently entrusted them with various responsibilities, thus proximately causing the deaths. VTN tendered the defense to Safeco, contending that the actions were potentially within the scope of the policy and that Safeco therefore had a duty to defend VTN. Safeco eventually accepted the defense, reserving its right to contest a duty to indemnify VTN for any resulting judgment. VTN also had insurance contracts with other insurance companies, including the Eagle Star Insurance Company (Eagle Star). Eagle Star denied coverage and thus did not participate in the wrongful death action.

The wrongful death litigation settled in a somewhat complex manner in 1975. The defendants and their insurance companies agreed to pay the wrongful death plaintiffs a portion of their damages. In particular, Safeco paid $50,000 on behalf of VTN and VTN paid $15,000 itself. In addition, VTN and VTN Orange County (an affiliate) agreed to have a stipulated judgment of $5,500,000 entered against them in a Nevada court. The wrongful death plaintiffs, however, agreed not to execute on the judgments against VTN and VTN Orange County. Instead, VTN and VTN Orange County assigned their rights against Eagle Star (the nonparticipating insurance company) for denying coverage and refusing to defend the suits.

Eagle Star sought to set aside the judgments under Nev.R.Civ.P. 60(b), the state's analogue of Fed. R.Civ.P. 60(b). Eagle Star argued that the wrongful death plaintiffs, defendants, and the other insurance companies fraudulently conspired to force Eagle Star to pay 85% of the judgment. Eagle Star brought the Rule 60(b) motion in the original action in state court, and instituted an independent proceeding in state court as well. Eagle Star also brought a suit in federal district court for declaratory judgment that it was not liable to VTN under the terms of the agreement. Nevada VTN tendered the defense of these

---

1. The flying club consisted of the President of VTN, a VTN employee, and two other members apparently unconnected to VTN. There does not appear to be any further connection between VTN and the club.

suits to Safeco, which refused to accept the defense based upon its belief that the actions were not within the coverage of the policy. These three actions were dismissed after Eagle Star agreed to pay $200,000 to each of the three families.

In the present action, VTN claims that Safeco breached its duty to defend VTN in the two Nevada actions brought by Eagle Star.[2] The district court, finding that the Rule 60(b) motion and independent proceedings were independent of the underlying wrongful death actions and hence not subject to Safeco's duty to defend, granted summary judgment for Safeco. VTN timely appeals.

## II

■ Although this case is a diversity action, we apply a federal standard of review. *Campbell v. Board of Trustees of Leland Stanford Junior University*, 817 F.2d 499, 501 (9th Cir.1987); *Churchill v. F/V Fjord (In re McLinn)*, 739 F.2d 1395, 1997 (9th Cir.1984) (en banc). We review de novo a district court's grant of summary judgment. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). We thus must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* We also review de novo the district court's determination of Nevada law. *See Campbell*, 817 F.2d at 501; *Churchill*, 739 F.2d at 1397. Since federal jurisdiction is invoked upon diversity of citizenship, we sit as a Nevada court and apply Nevada substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Campbell*, 817 F.2d at 501.

## III

Under Nevada law, this case is subject to the ordinary rules of contract law as applied to insurance contracts. Unambiguous language is construed according to its plain meaning and usage. *See Senteney v. Fire*

*Ins. Exch.*, 101 Nev. 654, 656, 707 P.2d 1149, 1150 (1985) (per curiam). The policy must be read as a whole to give a reasonable and harmonious meaning and effect to all its provisions. *National Union Fire Ins. Co. v. Reno's Executive Air, Inc.*, 100 Nev. 360, 364, 682 P.2d 1380, 1383 (1984) (per curiam). Provisions that are ambiguous in themselves or ambiguous when read together with other provisions of the policy must be construed against the insurer as the drafter. *Id.*

### A

■ We must first ascertain whether the policy provided for the defense of the claims brought by the wrongful-death plaintiffs. The policy provides that Safeco has "the right and duty to defend any suit against the insured seeking damages on account of ... bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent." Safeco's duty to defend thus extends beyond claims where liability within the scope of the policy ultimately is found. As many courts have noted, this standard promise in insurance contracts is distinct from the duty to indemnify, and extends to all potentially covered claims. *See, e.g., Smith v. Great Am. Ins. Co.*, 629 P.2d 543, 545–46 (Alaska 1981); *First Ins. Co. v. State*, 66 Hawaii 413, 420, 665 P.2d 648, 651 (1983); *Deseret Fed. Sav. & Loan Ass'n v. United States Fidelity & Guar. Co.*, 714 P.2d 1143, 1146 (Utah 1986). Thus, if the wrongful-death claims were potentially covered by the agreement, Safeco was under a duty to defend.

■ The wrongful death plaintiffs' claims against Nevada VTN allege wrongful action by Nevada VTN's corporate officers in their official capacities. The plaintiffs claimed that the trip to the bachelor party was in fact a business trip, and that the officers negligently planned and organized the trip thereby causing the crash. The claims sought to found liability on Nevada VTN for the negligent acts of its

---

**2.** VTN originally included the federal action in its complaint against Safeco. In its briefs before this court, however, VTN abandons any claims regarding the federal action.

officers and employees in planning and directing a business trip and the flight the trip entailed. These claims are thus within the coverage of the policy.

### B

■ The policy at hand contains a number of exceptions from Safeco's general duty to defend. Under Nevada law, an "insurer looking to restrict coverage should employ language which clearly and distinctly communicates to the insured the nature of the limitation." *Reno's Executive Air*, 100 Nev. at 364, 682 P.2d at 1383. Thus, "claims excluding coverage are interpreted narrowly against the insurer." *Id.* We examine the policy's exceptions to the duty to defend to determine if they clearly and distinctly excluded coverage for the wrongful-death plaintiffs claims.

The critical exceptions exclude coverage for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any aircraft owned or operated by or rented or loaned to the named insured, or (2) any other aircraft operated by any person in the course of his employment by the named insured." Safeco believes that these aircraft exceptions exempt it from any duty to defend; VTN believes that the provisions confirm Safeco's duty.

The first exception turns on the policy's distinction between the "named insured", which is the VTN corporation, and insureds, which includes, among others, "any executive officer, director or stockholder [of the corporation] while acting within the scope of his duties as such." Safeco argues that the allegations of the wrongful-death plaintiffs indicate that the plane was either operated by or lent to the named insured. The only possible construction of the wrongful-death complaint to create coverage, Safeco argues, is that the VTN employees were using an airplane that was lent to them in their official capacities. Any loan to the officers is a loan to the named insured, Safeco believes, and thus is excluded. According to Safeco, regardless of how one construes the wrongful-death plaintiffs' arguments, they could not be covered by the policy. Without coverage, Safeco further argues, Safeco had no duty to defend the initial proceedings that led to the stipulated judgment, and that Safeco could abandon the defense of the judgment at any time.[3]

Nevada VTN responds, correctly in our view, that Safeco's interpretation of the contract destroys the distinction between "named insureds" and "insureds." The policy defines "named insured" as the corporation. Thus, the first exception exempts Safeco from the duty to defend suits related to an airplane loaned to the corporation. There is no indication, however, that a business trip planned by the VTN employees would have entailed a loan of the airplane from the flying club to Nevada VTN. There was (and is) obvious disagreement as to whether the trip was on Nevada VTN business at all, but there is no indication that even a business trip would have involved a loan of the plane to the corporation. To accept Safeco's construction, one must accept that any business-related trip would involve the airplane's loan to the corporation. It seems plausible, however, that the trip could have been a business trip, sponsored by the employees with the use of the flying club's plane, with no loan of the plane to the corporation intended. One would not expect, for example, that if the party had chosen commercial air transportation, that the airliner would have been loaned to or operated by the company. At best, Safeco has demonstrated an ambiguity in the exception that must be resolved against it.

Further, Safeco's interpretation is not in accord with the other airplane exclusion in the policy. The second airplane exclusion exempts suits arising out of the use of "any other aircraft operated by any person in the course of his employment." If the first airplane clause excluded coverage for any time a plane was used on company

---

**3.** Since we find that the policy created a duty to defend, we do not reach Nevada VTN's claims that Safeco has waived its right to deny the defense or that Safeco is estopped from denying the defense.

business, the second exclusion would be superfluous. The policy must be construed to make sense as a whole. *Reno's Executive Air*, 100 Nev. at 364, 682 P.2d at 1383. When the policy is construed as a whole, the first exception cannot exclude liability where the alleged negligence does not involve a plane loaned or used by the corporation.

Safeco does not appear to rely on the second exclusion. It is unclear from the evidence of the crash whether a VTN employee was piloting the airplane. Due to this unclarity, the action against Nevada VTN would constitute a potentially covered claim that Safeco had a duty to defend.

We conclude that the policy exclusions did not exempt Safeco from the contractual duty to defend. Thus, Safeco had a duty to defend the wrongful-death actions.

### C

Safeco next argues that it had no duty to defend the state court actions to overturn the stipulated judgment. Safeco contends that both the independent action and the motion made in the original wrongful-death case are separate actions not within the policy coverage.

■ At a minimum, Safeco was under a duty to provide a defense for the attack on the judgment within the wrongful death action. Protection under the policy extends to *"suits* seeking damages." Eagle Star's motion to have the Nevada court grant relief in the wrongful-death action is part of that suit for damages. Since Safeco had a duty to defend that wrongful-death action, it had a duty to defend from the motion for relief from judgment filed in that action.

■ Eagle Star also sought relief in the Nevada state court via an independent action. Safeco argues that this, too, is not a suit seeking damages and that it thus had no duty to defend. Analytically, this claim is more difficult. An independent action resembles a separate suit, yet it seeks in essence to duplicate the relief afforded by a motion in the original proceedings. Motions and independent actions for relief

commonly have been treated as interchangeable. J. Moore & J. Lucas, 7 *Moore's Federal Practice* ¶ 60.31 (2d ed. 1985) ("[A] proceeding for relief under 60(b) may in an appropriate case be treated as an independent proceeding, and similarly an independent action may be treated as a proceeding under 60(b)."); *see also* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2868, at 244 (1973) (same). We are thus faced with the question of whether Safeco's contractual duty to defend a "suit seeking damages" extends to the defense of the judgment arrived at by the insurer, insured, and plaintiffs in that suit.

Safeco argues that the independent action is a "contract dispute" between Eagle Star and VTN, and hence not within the policy's duty to defend. A glance at the relief requested by Eagle Star, however, belies this assertion. Eagle Star requested relief from the stipulated judgment entered by Safeco, Nevada VTN, and the wrongful death plaintiffs. None of the contractual issues between Eagle Star and Nevada VTN were contested in Eagle Star's independent action; Eagle Star only requested relief from judgment dependent on the result of its separate suit for declaratory judgment. The contract issues were to be resolved in the federal suit for declaratory judgment. Eagle Star's action is thus an attack on the stipulated judgment, and not the adjudication of issues extraneous to the wrongful-death case.

The parties have supplied us with a number of suggested analyses for this admittedly novel legal situation. Safeco insists, at some length, that Eagle Star's action in the Nevada court is an independent action, from whence it concludes that independent actions cannot be contained within the duty to defend. Safeco fails to explain why, however, the defense of a suit for damages does not include defense of the judgment achieved in that suit against charges of fraud. Similarly, Nevada VTN notes that an independent action for relief from judgment may create ancillary jurisdiction in a federal court. *See Pacific R.R. v. Missouri Pac. Ry.*, 111 U.S. 505, 522, 4 S.Ct.

583, 592, 28 L.Ed. 498 (1884); 11 C. Wright & A. Miller, *supra,* at 242 & n. 23. At best, ancillary jurisdiction demonstrates that the Eagle Star's action arose out of the same transaction or occurrence, not that it is part of the same suit. We would not expect, for example, Safeco to defend a compulsory counterclaim on behalf of Nevada VTN simply because it arose out of the same transaction or occurrence. We remain left to interpret the insurance policy in light of the hybrid creature of an independent action.

Nevada has given us guidance in this question of contractual interpretation. In Nevada, every contract contains the implied covenant of good faith and fair dealing. *K Mart Corp. v. Ponsock,* 732 P.2d 1364, 1370 (Nev.1987). We thus examine the contract to determine, once all ambiguities are construed in favor of the insured, whether the contract may be read in good faith and fair dealing not to provide for the defense of a stipulated judgment arrived at with the participation of Safeco. We conclude that the contract cannot be so read.

We recognize that we "should not rewrite contract provisions that are otherwise unambiguous." *Senteney,* 707 P.2d at 1150. This case presents, however, a situation where the contract provisions by themselves are unhelpful in determining the responsibilities of the parties. Those provisions, combined with the general policy of fulfilling the insured's reasonable expectations and the parties' duty of good faith and fair dealing, confirm that Safeco's duty to defend extended to the defense of the stipulated judgment it had helped create.

Our holding is not broad. For Safeco to assume the defense, participate in the settlement, yet deny its responsibility to defend that judgment from allegations of fraud would be to negate the covenant of good faith and fair dealing. The fraud alleged by Eagle Star purportedly was committed by the parties to the original wrongful-death action. Those parties included Safeco for itself and for its insured. Nevada VTN was left to defend itself from alleged fraud in the judgment committed by its insurance company in the defense the company provided. As Nevada VTN demonstrates, the success of Eagle Star in either of its state-law actions would have opened the corporation once again to liability that seemingly had been resolved. Further, Nevada VTN's new attorneys were left to defend a settlement that they had not brought about. Safeco's complete abandonment of its insured to defend the judgment Safeco had left cannot be within the scope of its contractual duty of good faith or fair dealing.

Although we find that, as a matter of contract law, Safeco breached the contractual covenant of good faith and fair dealing, we can express no conclusions regarding potential tort liability. The covenant of good faith and fair dealing plays a special role in insurance contracts, arising "out of a need for the special protection of insureds in light of the quasi-public nature of the insurance industry and the element of an insured's heavy reliance upon the insurer's credibility." *Aluevich v. Harrah's,* 99 Nev. 215, 217, 660 P.2d 986, 987 (1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 998, 79 L.Ed.2d 230 (1984). Nevada thus "recognize[s] a cause of action in tort for the breach of an implied covenant of good faith and fair dealing where an insurer fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate for a loss covered by the policy." *Id.*

 Not all breaches of the contractual covenant of good faith and fair dealing reach to the level of a breach in *tort.* "A tort ... requires the presence of a duty created by law, not merely a duty created by contract; and although a duty of good faith and fair dealing is created by law in all cases, it is only in rare and exceptional cases that the duty is of such a nature as to give rise to tort liability." *K Mart Corp.,* 732 P.2d at 1370. Although contracts of insurance often give rise to these situations of a higher duty in tort, *see id.,* 732 P.2d at 1370–71, *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 768, 686 P.2d 1158, 1166, 206 Cal.Rptr. 354, 362 (1984), there remain gen-

uine issues of fact regarding whether Safeco's disregard of its contractual obligations amounts to bad faith breach in tort. In particular, we recognize that, in the words of one of the leading cases in this area, " 'it is not a tort for a contractual obligor to dispute his liability under [a] contract' if the dispute is honest and undertaken in good faith." *Id.* at 770, 686 P.2d at 1167, 206 Cal.Rptr. at 363 (citations omitted). Thus, although we find as a matter of law that the contractual covenant of good faith and fair dealing imposed a duty to defend, it is not at all clear that Safeco violated that duty in bad faith and hence is liable in tort.

That these differing tort and contract duties share the same name and origin is a source of no small confusion. It is clear, however, that one may violate a contractual duty imposed by good faith without incurring liability in tort. Liability in tort is instead premised upon a situation of special reliance between the parties, inadequacy of contractual relief for the breach, and bad faith/lack of proper cause for the breach. *See K Mart Corp.*, 732 P.2d at 1370–71. These factual issues are open to the district court upon remand. We find only that the duty of good faith created a contractual duty to defend, not that Safeco's failure to defend created liability for bad faith in tort.

### CONCLUSION

The district court's grant of summary judgment to Safeco is REVERSED with directions to enter summary judgment for Nevada VTN on its contract-based claims. *See Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir.1982) (court may grant summary judgment to the nonmoving party where there is no genuine issue of fact or law). The case is REMANDED to the district court for a determination of contract damages and further proceedings regarding Safeco's potential liability in tort.