**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TURNBERRY PAVILLON PARTNERS, L.P., <br><br> Plaintiff - Appellant, <br><br> v. <br><br> M.J. DEAN CONSTRUCTION, INC., <br><br> Defendant - Appellee. | No. 09-15942 <br><br> D.C. No. 2:07-cv-01042-KJD-PAL <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted April 16, 2010
San Francisco, California

Before: ARCHER, Senior Circuit Judge,[**] and CALLAHAN and BEA, Circuit
Judges.

Turnberry Pavilion Partners, L.P. ("Turnberry") appeals the district court's

order granting summary judgment to M.J. Dean Construction, Inc. ("Dean"). The

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The Honorable Glenn L. Archer, Jr., United States Circuit Judge for
the Federal Circuit, sitting by designation

district court held that a settlement agreement in a prior case released Turnberry's claims in this case. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.[1]

## I.

This court reviews de novo a district court's grant of summary judgment. *Nevada VTN v. Gen. Ins. Co. of Am.*, 834 F.2d 770, 773 (9th Cir. 1987). This court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## II.

This case is the third in a series of cases that arose from the construction of a luxury condominium tower in Las Vegas, Nevada. Turnberry, the developer, hired Dean as the concrete subcontractor and construction manager, and Malco, Inc. ("Malco") as the subcontractor for the interior drywall and site walls.

In the first case, *Malco*, the Nevada state trial court found that Dean had caused Malco "lost production" and "uncompensated overtime" due both to Malco's negligent concrete work and negligent construction management. While

---

[1] Because the parties are familiar with the facts of the case, we will repeat them here only to the extent necessary to explain our decision.

cross-appeals were pending before the state supreme court, Turnberry paid Malco $2.1 million to settle Malco's claims. In the second case, *One Turnberry*, the condominium association sued Turnberry in Nevada state court for construction defects in the finished tower. Turnberry filed a third-party complaint against Dean and other subcontractors on the ground that their negligence caused those finished-product construction defects. All the parties reached a settlement in which Turnberry and Dean agreed to pay the condominium association $2 million and $600,000, respectively. In this case, Turnberry seeks indemnity and contribution from Dean for Turnberry's *Malco* settlement payment, which was partly based on the "lost production" and "uncompensated overtime" caused Malco by Dean's negligent concrete work and negligent construction management.

The district court erred in holding that the plain meaning of the *One Turnberry* settlement agreement clearly and unambiguously released Turnberry's indemnity and contribution claims in this case. Nevada law governs the interpretation of the *One Turnberry* settlement agreement because this case is based on diversity of citizenship jurisdiction. *Nevada VTN*, 834 F.2d at 773. Under Nevada law, the interpretation of a contract is a legal issue for the judge to determine. *Sheehan & Sheehan v. Nelson Malley and Co.*, 117 P. 3d 219, 223 (Nev. 2005). Principles of contract law govern the interpretation of a settlement

3

agreement. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Nevada courts interpret an unambiguous contract, which is not reasonably susceptible to more than one interpretation, according to its plain meaning. *Canfora v. Coast Hotels and Casinos, Inc.*, 121 P.3d 599, 603 (Nev. 2005) (per curiam).

The *One Turnberry* settlement agreement releases "claims . . . now known with respect to the Claims asserted in the Litigation[.]" "Litigation" is defined to include only "claims asserted in the [*One Turnberry*] Subject Action, . . . as set forth in Plaintiff's Complaint, Chapter 40 Notice to Builder, Defendant's Third-Party Complaint, all Fourth Party Complaints, and . . . the final and supplemental reports of the following Plaintiff's experts: Christopher Allen, [etc.]" There is no claim in any of the *One Turnberry* pleadings for indemnity and contribution based on "lost production" and "uncompensated overtime" due to either Dean's negligent concrete work or negligent construction management. Nor does such a claim appear in Mr. Allen's "preliminary" report, which in any event is not a "final" or "supplemental" expert report included in the "Litigation." No other plaintiff expert reports appear in the record. Nor does the "Chapter 40 Notice."

Nothing suggests that the negligent concrete work that caused Malco the "lost production" and "uncompensated overtime" damages at issue in *Malco* also caused the finished-product construction defects at issue in *One Turnberry*. To the

4

contrary, Malco incurred "lost production" and "uncompensated overtime" damages because it had to "redo" and "correct" Dean's negligent concrete work. For example, the *Malco* court found that "a substantial portion of [Malco's] work was required to be *redone*," and that, "to *correct* Dean's bad concrete work, Malco was required to devote substantial additional time and expense to 'sculpt' the foam portions of the exterior of the building." Thus, if anything, the record suggests that the negligent concrete work that caused Malco "lost production" and "uncompensated overtime" did not remain as finished-product construction defects.

There is also nothing to suggest that Dean's negligent construction management caused the finished-product construction defects at issue in *One Turnberry*. As the *One Turnberry* court noted, "whether you do [the work] slowly or whether you don't; that doesn't turn to the issue of construction defect." Negligent construction management may have slowed the construction process, causing Malco "lost production" and "uncompensated overtime," but it does not necessarily cause construction defects.

## III.

Because there is no claim in any of the *One Turnberry* pleadings, written notices, and plaintiff expert reports for indemnity and contribution based on "lost

production" and "uncompensated overtime" due to Dean's negligent concrete work or negligent construction management, we hold that the *One Turnberry* settlement agreement did not release Turnberry's claims in this case. We therefore need not consider whether the doctrine of judicial estoppel applies here.

**REVERSED** and **REMANDED.**

**Turnberry Pavilion Partners, L.P., No. 09-15942**

CALLAHAN, CIRCUIT JUDGE, dissenting:

I dissent from the majority's decision to reverse the district court and remand. I would affirm the decision of the district court and hold that the settlement agreement in the prior case, *One Turnberry*, clearly and unambiguously released Turnberry Pavilion Partners, L.P.'s ("Turnberry") indemnity and contribution claims against M.J. Dean ("Dean") arising from the earlier *Malco* action.[1]

In the *One Turnberry* litigation, the condominium association's complaint asserted that the alleged defects, including the defective concrete work, arose from deficiencies in the "design, specification, planning, supervision, observation of construction, [and] development . . ." of the property caused by Turnberry and the contractors and subcontractors, which would include both Dean and Malco, Inc. ("Malco"). Similarly, Turnberry's Third-Party Complaint against, among others, Dean and Malco, generally alleged that each of the third-party defendants were negligent because "[i]f the Property is defectively designed, developed and/or constructed, the acts and/or omissions of the Third Party Defendants were the direct and proximate cause of any and all damages incurred by Turnberry." In

---

[1] Because the parties are familiar with the facts of the case, I will repeat them here only to the extent necessary to explain my dissent.

particular, the Third-Party Complaint sought indemnity and contribution against Dean for Dean's "fail[ure] to act reasonably in the design, development and/or construction" of the One Turnberry property."

The *One Turnberry* settlement agreement releases "all past, present, and future claims known relative to defects and deficiencies alleged in this Litigation." This includes "any and all . . . damages . . . of whatsoever kind and nature . . . now known with respect to the Claims asserted in the Litigation." "Claims" includes "any of the actionable omissions, conduct or damage of every kind and nature whatsoever, known, alleged, or asserted in the Litigation." "Litigation" encompasses both the Plaintiff condominium association's complaint in the *One Turnberry* action, as well as Turnberry's Third-Party Complaint.

First, I would find that the settlement agreement applied to Turnberry's claims against Dean related to Dean's negligent concrete work. The settlement agreement is broadly written to release all claims related to "defects and deficiencies in the building." Dean's defective concrete work is also a known "Claim" as it was at issue in the *Malco* action and it is encompassed by the pleadings in the "Litigation," as both the condominium association's and Turnberry's Third-Party Complaint bring claims related to the defective concrete

work.[2]  I would therefore find that any claim Turnberry had against Dean for Dean's negligent concrete work was released.

I would also hold that the settlement agreement released Turnberry's claims against Dean related to Malco's "lost production" and "uncompensated overtime" due to Dean's negligent construction management during the construction phase. Although I agree that the *One Turnberry* action focused on design defects, I would find that language in the relevant pleadings and the broad language of the settlement agreement also released Turnberry's claims. Specifically, Turnberry's claims against Dean related to Malco's losses due to Dean's negligent construction management were known "Claims" within the meaning of the settlement agreement, because Malco's complaints regarding Dean's negligent construction management were first raised in the *Malco* action. Further, these "Claims" are encompassed by the pleadings in the "Litigation," as the condominium association's complaint alleged deficiencies in the "*planning*, *supervision*, . . . [and] *development* . . ." (emphasis added) of the property caused by Turnberry and the contractors and subcontractors. Similarly, the Third-Party Complaint against

---

[2]    In the *Malco* action, the court found that Malco suffered "unanticipated delay and expense" due to the "quality of Dean's concrete work." The court also found that Dean's improper coordination of the subcontractor's work schedules caused "problems, delays and additional costs" to Malco.

-3-

the contractors alleged claims related to defective design, development and/or construction. In my view, the words "planning," "supervision," and "development" are sufficient to encompass Turnberry's claims against Dean for Malco's "lost production" and "uncompensated overtime" due to Dean's negligent construction management during the construction phase.

Because the settlement agreement is broadly written to release all of the past, present and future "Claims" raised in the "Litigation," and because Turnberry's claims against Dean for Dean's negligent concrete work and negligent construction management satisfy the requirements for being "Claims" in the "Litigation," I would affirm the district court.