**Paul R. Lemnah v. American Breeders Service, Inc., Frederick Buschner and Bruce Bonesteel**

[482 A.2d 700]

No. 82-126

Present: Billings, C.J., Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed June 29, 1984

*Michael R. Gadue,* Burlington, for Plaintiff-Appellee.

*Michael B. Clapp* of *Dinse, Allen & Erdmann,* Burlington, for Defendant-Appellant.

**Underwood, J.** Defendant American Breeders Service, Inc., appeals from a judgment holding it liable to plaintiff for breach of contract and invasion of privacy. The other named defendants were dismissed as parties defendant by the trial

court. Those rulings are not before us on appeal. Judgment was entered on a general jury verdict that awarded plaintiff $10,000 in compensatory damages and $60,000 in punitive damages.

After the plaintiff rested, defendant moved for directed verdicts on the breach of contract action, on the invasion of privacy action and on damages. The trial court denied these motions. Defendant moved for judgment notwithstanding the verdict or a new trial after the jury returned its verdict. The record indicates that the defendant failed to renew its motion for a directed verdict at the close of all the evidence, as required by V.R.C.P. 50 (b) as a prerequisite to move for judgment notwithstanding the verdict. Thus, defendant apparently did not preserve for appellate review the trial court's denial of its motion for judgment notwithstanding the verdict. *Palmisano* v. *Townsend,* 136 Vt. 372, 375, 392 A.2d 393, 395 (1978). We note, however, that the defendant challenged the sufficiency of the evidence on the invasion of privacy action during the in-chambers charge conference after the defendant rested. The defendant did not object to the substantive law regarding invasion of privacy embodied in the court's instructions, but argued that there was not enough evidence for that issue to go to the jury. In response, the court said, "And so we'll deny your motion at this point." It seems clear to us that the defendant was arguing a motion for directed verdict on the invasion of privacy action. Although never articulated as a motion, it seems equally clear that the court treated it as such. Thus, we will consider defendant's argument that the trial court erred in not granting its motion for judgment notwithstanding the verdict for the invasion of privacy action only; the contract and damages portion of the motion for judgment notwithstanding the verdict were not preserved for our review.

We must, therefore, look to see what issues were raised in defendant's motions for directed verdict at the close of plaintiff's case; those rulings are preserved for our review. In addition to challenging the sufficiency of the evidence for the invasion of privacy action, defendant moved for a directed verdict on the issue of breach of contract and damages for breach

of contract, after the plaintiff rested. There was no motion for directed verdict regarding punitive damages at the end of plaintiff's case or at the close of all of the evidence. Defendant first challenged punitive damages by motion for judgment notwithstanding the verdict. Thus, that issue is not preserved for review. *Palmisano* v. *Townsend, supra.*

The facts necessary for determination of this appeal follow. We will view the evidence in the light most favorable to the plaintiff, excluding modifying evidence. *Vermont National Bank* v. *Dowrick,* 144 Vt. 504, 509, 481 A.2d 396, 399 (1984). Plaintiff and defendant entered into a written contract in August of 1961 under which the plaintiff would be a distributor and representative salesperson of defendant. Defendant produces and markets bovine semen for sale nationally through local sales representatives, called "distributors." Plaintiff was a distributor of defendant's bovine semen for Addison and Grand Isle counties in Vermont. Plaintiff also marketed services, such as artificial insemination of cows, independently of the contract with defendant. A provision of the contract, term 11(c), provided that "This agreement may be terminated . . . by [defendant] without notice should any balance due by Distributor [plaintiff] hereunder not be received by [defendant] within 30 days from the discount date thereof." On June 17, 1977, defendant notified plaintiff that he was being terminated under 11(c). There is no dispute that plaintiff was more than $6,000 delinquent for purchases under the contract at the time defendant terminated the contract.

The evidence indicated that, over the years, plaintiff was consistently late in making payments under the contract. In fact, a regional sales manager of defendant testified that, to his knowledge, plaintiff had never been current in his payments. In its brief, defendant conceded that on occasions prior to June of 1977 it had elected to accept late payments from plaintiff rather than to exercise its option to terminate.

There is also evidence that defendant warned plaintiff that it would not continue to accept late payments and that such delinquencies could cause defendant to terminate the contract. At trial, plaintiff himself admitted that he had been warned about the delinquencies several times over a period from 1975 to 1977; plaintiff indicated that he understood the consequences

of the delinquencies. As recently as April of 1977, plaintiff was orally warned by a district manager of defendant that the contract would be terminated if plaintiff's accounts were not kept current. Nevertheless, plaintiff's delinquencies increased from April to June of 1977, and defendant informed plaintiff that it was terminating their contract pursuant to term 11 (c), quoted above.

There was testimony at trial about statements made by an employee of defendant concerning the termination of the contract. The witness, a customer of plaintiff, asked defendant's employee why plaintiff had been terminated as distributor. The witness testified that defendant's employee said plaintiff had been terminated for two reasons: (1) other farmers had indicated that semen which plaintiff had sold to them had thawed and been refrozen and was not performing properly, and (2) plaintiff had a heavy drinking problem. Furthermore, this same employee of the defendant testified that there was a discussion of plaintiff's termination at every farm he visited. He did not testify, however, as to the details of those discussions. The record does not indicate whether there was discussion of thawed semen or a drinking problem at any time other than the one just mentioned.

The court instructed the jury on breach of contract, invasion of privacy, compensatory damages as they might apply to each action, and punitive damages. The instructions on punitive damages were not tied specifically to either action but were explained generally as a separate part of the instructions. As indicated earlier, the jury returned a general verdict which simply awarded plaintiff $10,000 in compensatory damages and $60,000 in punitive damages. There was apparently no request that the counts be separated, that interrogatories be submitted to the jury, or that the jury render its decisions on special verdicts. Thus, in order to uphold the verdict, we must find that the jury could have found liability and damages for plaintiff in both causes of action independently. *Lincoln* v. *Emerson*, 137 Vt. 301, 303, 404 A.2d 508, 510 (1979).

There was no objection to the substance of the court's instructions below, and a charge to the jury which is not objected to becomes the controlling law of the case. *Jackson* v. *Rogers*, 120 Vt. 138, 144, 134 A.2d 620, 623 (1957) ; see *Lent*

v. *Huntoon*, 143 Vt. 539, 554, 470 A.2d 1162, 1172 (1983) (absent glaring error, instructions on damages become controlling law of the case). After the charge was read to the jury, the court asked counsel for both parties if there were any objections. Plaintiff had none. Defendant asked for a clarification on one point, which was made, and generally objected to *any* instructions on invasion of privacy. That objection went to the quantum of evidence produced by plaintiff on that cause of action, however, and not to the principles of law embodied in the instruction. As indicated earlier, we will treat this as a motion for directed verdict, not merely as an objection to the instructions.

I.

The law expressed in the court's charge on the invasion of privacy action was taken almost verbatim from the American Law Institute's Restatement (Second) of Torts §§ 652A–652E (1977).[1] Defendant's motion for directed verdict challenged the element of "publicity." Publicity, as explained in the charge to the jury in this case,

> means the dissemination of information to the public at large or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. It does not mean the communication of information to a single person or to a small group of people.

This instruction is almost an exact recitation of the Restatement, *supra*, § 652D comment a. The jury was further instructed that invasion of privacy could be found in either of two ways: (1) the defendant gave unreasonable publicity to plaintiff's private life, or (2) the defendant gave publicity that unreasonably placed the plaintiff in a false light. The instruction on publicity, quoted above, was specifically made applicable to both forms of invasion of privacy.

---

[1] Research has failed to disclose any decision of this Court on the tort of invasion of privacy. There was no dispute among the parties that the law as expressed in the Restatement would control. For purposes of this case, therefore, we will apply the law as instructed. We do not, however, address the general question of what elements comprise the tort of invasion of privacy in Vermont.

Defendant argues that there was insufficient evidence of publicity for the tort to have been submitted to the jury, since the testimony indicated that defendant's employee had mentioned thawed semen and a drinking problem only to one person. Plaintiff argues that the following excerpt from the testimony of defendant's employee constitutes sufficient publicity: "Question: Do you recollect her asking you what happened to [the plaintiff] ? Answer: Not in particular, because every farm you went to we discussed [the termination of plaintiff]."

The quoted testimony in no way indicates that information about the plaintiff was disseminated to the public at large or that any information was substantially certain to become public knowledge. The statement about "every farm you went to" was never linked to the specific comments alleged to be tortious. The only thing defendant's employee admitted discussing "at every farm" was plaintiff's termination. Thus, we are left with evidence that could only support a tortious statement made to one person. This is insufficient to constitute the publicity necessary for a cause of action for invasion of privacy. Restatement, *supra*, § 652D comment a.

In *Tureen* v. *Equifax, Inc.*, 571 F.2d 411 (8th Cir. 1978), the court relied on § 652D and comment a of the Restatement in applying Missouri law. The evidence indicated that the defendant, a consumer credit firm, disclosed details of plaintiff's insurance history to an insurance company. Defendant appealed the trial court's refusal to grant its motion for a directed verdict on the element of publicity in an invasion of privacy action. Defendant argued that the letter was only sent to one insurance company and not to the public at large. The circuit court held that the lower court should have granted the motion for directed verdict because of inadequate publicity. *Id.* at 419.

In *Beard* v. *Akzona, Inc.*, 517 F. Supp. 128 (E.D. Tenn. 1981), plaintiff sued her employer for invasion of privacy. Based on tape recordings of several phone conversations between plaintiff and her paramour, the defendant fired them both. The court noted that the evidence only indicated that the tapes were disclosed to four or five of defendant's managerial employees and that this was insufficient to constitute publicity defined similarly to the instant case. *Id.* at 133.

Other jurisdictions have also found insufficient publicity where the facts indicate only limited communication. *Schwartz v. Thiele*, 242 Cal. App. 2d 799, 806, 51 Cal. Rptr. 767, 771 (1966) (letter indicating that plaintiff was mentally ill and sent to mental health agency insufficient publicity for invasion of privacy) ; *French* v. *Safeway Stores, Inc.*, 247 Or. 554, 558, 430 P.2d 1021, 1023 (1967) (no public disclosure where letter casting aspersions on plaintiff was circulated to plaintiff's son, daughter-in-law and store personnel). But see *Santiesteban* v. *Goodyear Tire & Rubber Co.*, 306 F.2d 9, 11 (5th Cir. 1962) (ample publicity where defendant's actions in parking lot led to widespread humiliation of plaintiff at his work place).

■ Thus, the reported decisions applying a standard of publicity similar to that embodied in the Restatement, and which the parties in this case agree correctly expresses the law applicable to plaintiff's claim of a tortious invasion of his privacy, have found that the communication must be to a group larger than several people. It was error not to have granted defendant's motions for directed verdict and for judgment notwithstanding the verdict on the cause of action for invasion of privacy.

II.

Next we will address the claims of error in the contract cause of action. The defendant claims that, at the conclusion of the plaintiff's case, the trial judge committed error in not granting its motion for a directed verdict on the breach of contract action and damages for the breach of contract. We find no error in the trial court's denial of these motions.

There is no question that term 11(c) of the contract, quoted above, makes timely payment by plaintiff a specific obligation which, if breached, may result in defendant's termination of the contract. Plaintiff does not dispute the meaning of term 11(c), but argues that defendant waived this provision; thus, plaintiff argues that the termination of the contract by defendant constituted a breach. In arguing its motion for directed verdict, defendant made three claims, all of which are briefed on appeal: (A) the plaintiff failed to plead waiver and therefore is barred from relying on the theory; (B) there was insufficient evidence to submit the issue of waiver to the jury;

and (C) there was insufficient evidence for the jury to have awarded damages for breach of contract.

## A.

Defendant argues that waiver must be affirmatively pled and that plaintiff's failure to do so bars him from relying on this theory. In support of this argument, defendant cites Annot., 120 A.L.R. 8, at 9-22 (1939), for the proposition that waiver or equitable estoppel must be affirmatively pled. The world of civil procedure, however, has turned many times since the authority relied upon in this annotation. Most importantly, Vermont now operates under the concept of notice pleading embodied in the Vermont Rules of Civil Procedure. Rule 8(a)(1) requires "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." This is the very essence of modern notice pleading. See *Levinsky* v. *Diamond*, 140 Vt. 595, 600–01, 442 A.2d 1277, 1280 (1982) (no requirement that specific facts be stated; test is fair notice to other party).

Plaintiff's complaint simply mentioned "breach of contract" as a cause of action in the lawsuit. Arguably, this could be a less than satisfactory statement to enable a defendant to understand the nature of the alleged breach. Our Rules of Civil Procedure, however, do not leave such a defendant to stand in wonder. Rule 12(e), "Motion for More Definite Statement," is an easy way to cure a vague pleading. The record indicates that no such motion was ever made by the defendant.

Instead, defendant allowed the plaintiff to go to trial on the contract action and to present evidence on the possible waiver of term 11(c). Plaintiff's evidence of waiver came in with no objection from defendant as to its relevance. It was not until the conference on defendant's motion for a directed verdict, made after the plaintiff rested, that defendant raised the sufficiency of the pleadings on the waiver issue. Under these circumstances, evidence of waiver presented at trial without objection is treated as if it had been raised in the pleadings. V.R.C.P. 15(b). In construing Rule 15(b) we have held that, "[o]nce issues not raised by the pleadings are tried by the implied consent of the parties they are treated in all respects

as if they had been raised by the pleadings." *Valsangiacomo v. Paige & Campbell, Inc.*, 136 Vt. 278, 280, 388 A.2d 389, 391 (1978). When defendant allowed the evidence of a waiver of term 11(c) to come in at trial without objection, it relinquished any challenge to dismiss the case for inadequate pleadings on the contract issue. Consistent with the spirit of the Vermont Rules of Civil Procedure, the defendant had notice of plaintiff's theory of breach of contract.

### B.

Defendant next argues that there was not enough evidence of the waiver of term 11(c) of the contract by defendant for the issue to go to the jury.

At the outset, we note that this contract, which involved "transactions in goods," is covered by the Uniform Commercial Code's provisions on Sales. 9A V.S.A. § 2—102. Section 2—209(4)[2] provides that "[a]lthough an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver." The Code does not define waiver, so we must look to Vermont's general law regarding waiver of contract terms to supplement the Code. *Id.* § 1—103.

In *North v. Simonini*, 142 Vt. 482, 457 A.2d 285 (1983), we considered the waiver of a term in a contract for the sale of realty. We defined such a waiver as "the voluntary relinquishment of a known right." *Id.* at 485, 457 A.2d at 287. We found that a provision in the contract providing for inspection of utility lines within fourteen days of their installation was waived because it had not been enforced. *Id.* at 486, 457 A.2d at 287.

The rule that a term in an executory contract may be waived if one party continues performance under the contract knowing

---

[2] Plaintiff erroneously urges us to consider the "course of performance" provisions of 9A V.S.A. § 2—208. This section, however, deals with *construction* of contracts; subsection (2) specifically provides that, when inconsistent, "express terms shall control course of performance . . . ." In the instant case, there is no question as to the plain meaning of term 11(c). The question is whether that term was operative or whether it was waived. Thus, § 2—208 has no application.

that the other party has failed to perform under the term is widely recognized.

There are few principles of contract law better established, or more uniformly acknowledged, than that a party to an executory bilateral contract, who keeps the same in existence after a known breach by the other party and accepts further performance from the party who has committed the breach, waives the breach, in the absence of an assertion of his intention to retain the rights accruing to him as a result of said breach, assented to by the other party; and if the injured party thereafter does not make good his promises of performance, he is responsible for such failure.

*John B. Robeson Associates, Inc.* v. *Gardens of Faith, Inc.*, 226 Md. 215, 222–23, 172 A.2d 529, 533 (1961) ; accord 5 S. Williston, Williston on Contracts § 688 (3d ed. 1961) ; 3A A. Corbin, Corbin on Contracts § 755 (1960). Such a waiver may be express or it may be manifested by conduct. *Saverslak* v. *Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979), *cert. denied*, 444 U.S. 1078 (1980). The waiver of a timely payment provision has been recognized in an intermediate Illinois decision: "Where a party accepts late payments it may waive or suspend its right to timely payments . . . ." *Allabastro* v. *Wheaton National Bank*, 77 Ill. App. 3d 359, 365, 395 N.E.2d 1212, 1217 (1979) ; see also *Zelinger* v. *Uvalde Rock Asphalt Co.*, 316 F.2d 47, 52–53 (10th Cir. 1963) (continued performance by one party in face of default by other party may operate as waiver of termination provision) ; *33 Flavors of Greater Delaware Valley, Inc.* v. *Bresler's 33 Flavors, Inc.*, 475 F. Supp. 217, 229 (D. Del. 1979) (party to contract may waive quota provision for failure to enforce it strictly).

With these principles in mind, we turn to the facts of the instant case. There is evidence indicating that the defendant had consistently accepted late payments from the plaintiff. In fact, an agent of the defendant testified that he never knew of a time when the plaintiff was current in his payments. With such evidence before the trial court, there can be no doubt that there was a question for the jury's determination. If the jury were to find that term 11(c) had been waived,

then it could have found that defendant breached the contract by terminating plaintiff as a distributor.[3] Thus, we find no error when the trial court denied defendant's motion for a directed verdict on the issue of breach of contract.

## C.

Finally, defendant argues that the court erred in denying its motion for directed verdict on the issue of contract damages. Defendant argues that there was insufficient evidence on the issue to submit the question to the jury. We find no error.

Defendant proceeds from the erroneous premise that damages in contract are limited to the loss of bargain resulting from the breach. Defendant would limit the plaintiff here to recovery under § 2—713(1) only; in a contract for the sale of goods, 9A V.S.A. §§ 2—711-2—717 specifically set out the remedies available to the buyer. Since defendant challenges damages on the trial court's failure to grant its motion for a directed verdict, we must look at the evidence of damages in the light most favorable to the plaintiff and exclude any modifying evidence. *Johnson* v. *Hoisington,* 134 Vt. 544, 546, 367 A.2d 680, 682 (1976). The general rule for determining damages is that the jury should estimate the amount within reasonable limits based upon the evidence before it. *Dunn* v. *State Highway Board,* 135 Vt. 26, 27, 370 A.2d 626, 628 (1977). Furthermore, difficulty in computing damages does not preclude the jury from making an assessment if there is evidence from which an estimation may be made with reasonable certainty. *Hinesburg Sand & Gravel Co.* v. *Town of Hinesburg,* 135 Vt. 484, 487, 380 A.2d 64, 67 (1977). Thus, we must see if the jury had before it sufficient evidence from which it could have made a reasonable determination of damages.

---

[3] In its motion for directed verdict, defendant did not argue that it was entitled to prevail because, as a matter of law, term 11(c) had been reinstated. Reinstatement of term 11(c) was subsequently explained to the jury in the court's charge, but the issue was not raised as part of the motion for directed verdict at the end of the plaintiff's case. Cf. 9A V.S.A. § 2—209(5).

Plaintiff introduced evidence of his monthly sales of bovine semen for the four and one-half years preceding the contract termination. There was also evidence of plaintiff's costs and of his percentage markup on the semen. There was evidence that, as a result of the contract termination, plaintiff suffered depression and disability which continues to inhibit his work. Finally, plaintiff presented evidence of his income and tax patterns before and after the breach. Since we are remanding the contract action for a new trial, we refrain from commenting on the relevancy of this evidence as it might relate to any particular kind of damages. We feel, however, that it amply justifies the trial court's decision in denying the motion for directed verdict.

As previously noted, the jury returned a general verdict on both the invasion of privacy action and on the contract action. Since we have held that the motions for directed verdict and for judgment notwithstanding the verdict should have been granted on the invasion of privacy action, we cannot uphold the general jury verdict. *Lincoln* v. *Emerson, supra,* 137 Vt. at 301, 404 A.2d at 510.

*Judgment for the defendant on the cause of action in tort. Reversed and remanded for a new trial on the cause of action in contract.*