## Vineyard Brands, Inc. v. Oak Knoll Cellar d/b/a Rutherford Hill Winery

[587 A.2d 77]

No. 87-325

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed December 21, 1990

474

*John C. Holme, Jr.* of *Dakin & Holme,* Chester, and *John R. Shuman, Jr.* of *Ware & Freidenrich,* Palo Alto, California, for Plaintiff-Appellant.

*James F. Carroll* and *Timothy L. Taylor* of *Kelley, Meub, Powers & English, Ltd.,* Middlebury, for Defendant-Appellee.

**Allen, C.J.** This case arose after defendant Rutherford Hill Winery terminated its marketing contract with plaintiff Vineyard Brands, Inc. Plaintiff brought suit, claiming breach of contract and, in the alternative, that the contract had been terminated without reasonable notice. Defendant counterclaimed, seeking, among other things, amounts owed by plaintiff on account. The case was tried before a jury, which brought in a verdict in favor of plaintiff for $98,792 and, on the counterclaim, in favor of defendant for $132,716.03 plus interest in the amount of $54,481.22. Plaintiff appeals the ensuing judgment, and defendant cross-appeals. We affirm.

Rutherford Hill is a California winemaker and distributor. In 1977, the parties reached a contractual agreement, renewable annually, under which Vineyard Brands marketed and distributed Rutherford Hill wines in approximately sixteen eastern and central states. In essence, plaintiff solicited orders for the wine, while defendant arranged for direct shipments, accompanied by bills of lading, to the purchasers. Purchasers paid plaintiff for the wine and plaintiff had forty-five days from the date of shipment to pay defendant these amounts less a 12%

commission. Defendant sent invoices to plaintiff that included a "service charge" provision, that established an 18% annual interest rate on past-due amounts.

In 1982, defendant sent plaintiff a letter proposing a modification of the parties' agreement. Under the proposal, certain performance standards would be established and, if plaintiff met those standards, defendant would continue the existing marketing arrangement through 1990. A key portion of the testimony at trial focused on that offer and the question of whether plaintiff had ever effectively accepted the offer.

On July 1, 1985, defendant terminated the contract. Plaintiff then filed suit in Windsor Superior Court, seeking $942,588.97 in lost profits over the period starting with the date of termination and ending on December 31, 1990, the date that the contract would expire if the claimed modification of the contract were effective. In the alternative, plaintiff requested $78,204 in damages for defendant's alleged failure to provide adequate notice of termination. Defendant counterclaimed for amounts owed on wine already delivered, totaling $132,716.56, and for an unspecified amount of interest. Defendant also sought damages on grounds of conversion, breach of fiduciary duty, and breach of contract.[1] The parties agreed that, because the contract had been entered into in California, California law should apply.

At trial, defendant submitted into evidence its computation of interest on the amounts owed by plaintiff based on the 18% annual interest rate provided for in the invoices. At the end of the fourth day of the five-day trial, plaintiff filed a supplemental trial brief, arguing that the 18% annual interest rate was usurious under California law. The court ruled that it would not instruct the jury on the usury issue.

Defendant asked the court to charge the jury on the law of agency, fiduciary duty, and breach of fiduciary duty. Defendant

---

[1] Defendant also filed a third party complaint against Robert Haas, the president of Vineyard Brands, Inc., alleging conversion and breach of fiduciary duty. The trial court granted a pretrial motion, filed by plaintiff and Haas, for partial summary judgment on the conversion counts brought against them. At the charge conference, the court dismissed the remaining claim against Haas.

also requested a jury instruction to the effect that, under California law, an offer specifying a particular manner of acceptance must be accepted in that manner. The court refused both of these requests.

## I.

On appeal, plaintiff does not contest the trial court's judgment with respect to the bulk of the damages awarded, but instead argues that defendant's interest rate is usurious and that the court erred in refusing to charge the jury on the law of usury. Defendant argues in response that plaintiff waived the usury issue by raising it too late in the proceedings.

██ Usury is an affirmative defense. See *Dyer v. Lincoln*, 11 Vt. 300, 301 (1839). "In pleading to a preceding pleading, a party shall affirmatively set forth and establish . . . any . . . matter constituting an avoidance or affirmative defense." V.R.C.P. 8(c). Generally, an affirmative defense cannot be maintained either at trial or on appeal unless it was specifically raised in the pleadings. *Brouha v. Postman*, 145 Vt. 449, 452, 491 A.2d 1038, 1040 (1985). Here, defendant observes that plaintiff raised the usury claim for the first time, not in the pleadings, but in a supplemental trial brief filed at the conclusion of the fourth day of a five-day trial, after each party had presented its case in chief.[2]

██ Under the circumstances of this case, however, we conclude that it would be manifestly unfair to hold that plaintiff's claim was waived. In its own pleadings, defendant failed to re-

---

[2] On the third day of trial, the parties filed with the court the following stipulation: "The parties hereto, by and through their counsel, hereby stipulate that the federal discount rate that applies in this case is 8%." The transcript itself does not clarify the context in which this document was filed. Nevertheless, the only possible relevance of the federal discount rate in this case is to the usury claim. California's state constitution provides that interest rates may not exceed the prevailing federal discount rate by more than five percent. Cal. Const. art. XV, § 1. The record, of course, contains no objection to the injection of the issue at this point in the trial, since it was introduced by stipulation. The stipulation suggests that the usury issue may have been tried by consent; if so, any waiver under Rule 8(c) would be negated. See V.R.C.P. 15(b). Because we decide that Rule 8(c) does not control in this case for other reasons, however, we do not reach the question of consent.

quest the 18% service charge on amounts owed by plaintiff; it was this service charge that would subsequently provide the basis for plaintiff's usury claim. The record reveals that defendant requested only a principal amount of $134,274.56 and "a sum as yet unspecified for interest and consequential damages." "A complaint is sufficient if it gives fair notice of the claim and the grounds upon which it rests." *Mintz v. Matalon*, 148 Vt. 442, 444, 535 A.2d 783, 785 (1987). Defendant's request for "unspecified" interest in its counterclaim did not meet this standard. A generalized request for interest cannot be equated with a claim for recovery of a specific rate of interest. Defendant's generalized request is all the more inadequate because it calls for a recovery of interest, rather than the "time-price differential" indicated on its invoices to plaintiff. It was on the fourth day of trial that defendant submitted into evidence its computation of interest based on an 18% rate. Plaintiff's trial brief on the usury issue promptly followed. At an in-chambers conference on the following day, the final day of trial, the court took up the usury issue with counsel. At no time did the court or defendant's counsel object to the usury issue on the ground that it was not raised in the pleadings. The court's only concern was plaintiff's compliance with V.R.C.P. 44.1(a), which requires a party to give notice of foreign law it intends to raise. Counsel for defendant conceded that it had notice—indeed it stipulated—that California law would apply.

■ On these facts, we hold that plaintiff's failure to plead usury does not constitute a waiver of the defense. See *Garrett v. City of Hamtramck*, 503 F.2d 1236, 1245 (6th Cir. 1974) (failure to affirmatively plead defense of laches in regard to certain persons' claims held not a waiver of the defense where complaint did not specifically seek relief for such persons).

## II.

The invoices sent to plaintiff by defendant provided that payment was due within forty-five days from the date of shipment and included the following statement: "A service charge of 1.5% per month will be added as a time-price differential on amounts past due." Plaintiff claims that enforcement of that provision would violate California's law on usury. Defendant concedes that California law governs the dispute, but maintains that the service charge is not usurious.

Under Article XV, § 1 of the California Constitution, a "rate of interest [f]or any loan or forbearance of any money" may not exceed 5% over the prevailing federal discount rate.[3] The parties stipulated that the applicable federal discount rate in this case is 8% per annum. As the 18% rate specified on the invoices exceeds the 13% rate thus permitted by the California Constitution, the remaining question is whether defendant's imposition of an 18% service charge on amounts due after forty-five days from shipment constitutes, in California, a "rate of interest [f]or any loan or forbearance of any money."

Any doubt as to the resolution of this question was put to rest by the California Supreme Court's recent decision in *Southwest Concrete Products v. Gosh Construction Corp.*, 51 Cal. 3d 701, 798 P.2d 1247, 274 Cal. Rptr. 404 (1990).[4] The court, construing a commercial sales contract provision which charged late payment interest of 18% per year if payments were not made within a specified period, held that it was not subject to California's usury law. *Id.* at 708–09, 798 P.2d at 1252, 274 Cal. Rptr. at 409. The court based its conclusion on two grounds. First, the interest provision fell within the exemption for a "credit" sale, as opposed to a "cash" sale, because the buyer and seller did not exchange the goods and payment at the same time. The buyer had a certain number of days within which to make payments, and only after failure to do so would interest accrue. *Id.* at 708, 798 P.2d at 1251–52, 274 Cal. Rptr. at 408–09. Second, the interest provision fell within the rule "that a transaction that was not usurious at its inception cannot become usurious by virtue of the debtor's voluntary default." *Id.* at 708, 798 P.2d at 1252, 274 Cal. Rptr. at 409. Interest accrued only upon the buyer's failure to make timely payment.

█ The analysis in *Southwest Concrete Products* compels the conclusion that the "service charge" provision in this case was also exempt from California's usury law. The provision involved a "credit" as opposed to "cash" sale because payment was not due immediately, but rather forty-five days from the

---

[3] Certain types of institutional lenders are exempt from the restrictions. The exemptions do not apply here.

[4] The parties stipulated that this Court's decision should await the decision in *Southwest Concrete Products*, which was issued on November 1, 1990.

date of shipment. Further, the provision falls within the rule that a debtor's voluntary default cannot transform a non-usurious transaction into a usurious one. It was plaintiff's failure to make timely payment that caused the interest to accrue. Accordingly, the judgment below with respect to interest on defendant's recovery is affirmed.

## III.

In its cross-appeal, defendant begins by challenging the trial court's refusal to instruct the jury on California law regarding offer and acceptance. In that jurisdiction, "[i]f a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to." Cal. Civ. Code § 1582 (West 1982). Defendant maintains that the omission of an instruction on this point was erroneous and prejudicial.

Essential to plaintiff's breach of contract claim was the assertion that the parties' original marketing contract—which was a renewable, year-to-year contract—had been modified to extend through 1990. Absent this claimed modification, plaintiff would be forced to rely on its alternative theory of recovery: defendant's alleged failure to give reasonable notice of the termination.

In 1982, defendant sent plaintiff a letter suggesting that if plaintiff agreed to meet certain prescribed performance standards, then defendant would continue the existing marketing arrangement through 1990. The letter concluded with the following language: "What do you think of that proposal? I would like a written reply so that we each know we are in accord in what we have agreed." Plaintiff's written response stated only that: "Your offer seems interesting and Charlie and I are discussing ways of meeting your goals. He will talk to you about it when he sees you in May."

At trial, defendant attempted to establish that plaintiff had never accepted the offer to modify the contract because the requested "written reply" was never made. Plaintiff, on the other hand, asserted that it had effectively accepted the offer by continuing its marketing representation of Rutherford Hill.

The jury brought in a verdict for plaintiff, awarding damages in the amount of $98,792. Because it was a general verdict, it is

difficult to ascertain the theory of recovery on which plaintiff prevailed. Only if plaintiff were awarded damages on the breach of contract claim can defendant claim prejudice because of the allegedly erroneous jury instructions. If, on the other hand, plaintiff's recovery was based only on defendant's claimed failure to give reasonable notice of termination, then any error relating to the contract modification instructions would be irrelevant.

Defendant maintains that the magnitude of the award alone indicates that it was based, at least in part, on breach of contract. Defendant observes that plaintiff initially requested damages in the amount of $78,204 under the lack of reasonable notice theory and that the evidence of damages actually presented at trial would limit recovery on this theory to $73,074. Hence, defendant contends, a portion of the $98,792 award must have been attributable to the breach of contract theory. Because it is arguable that the requested jury instruction on the California offer and acceptance statute could have negated the claim that a long-term contract existed, defendant urges that the omission of the instruction was prejudicial.

██ ██ "General verdicts should be construed to give them effect, if that can reasonably be done." *Larmay v. VanEtten*, 129 Vt. 368, 374, 278 A.2d 736, 740 (1971). Furthermore, if a jury verdict appears to be justified under "'any reasonable view of the evidence, it must stand.'" *Claude G. Dern Electric, Inc. v. Bernstein*, 144 Vt. 423, 426, 479 A.2d 136, 138 (1984) (quoting *Crawford v. State Highway Board*, 130 Vt. 18, 25, 285 A.2d 760, 764 (1971)).

Here, although the jury's award of $98,792 exceeded the $73,074 requested by plaintiff as damages on the reasonable notice claim, it does not necessarily follow that the award was based upon plaintiff's contract modification argument. The evidence presented at trial established that two months remained on the existing term of the parties' year-to-year contract when defendant terminated the relationship. Based on this and other evidence, the jury could have awarded lost profit damages to plaintiff for these two months. If the jury then concluded that plaintiff would have been due six-months' notice of termination beginning at the end of the contract year, and if lost profits damages for this period of time (the $73,074) were added to

those calculated for the two months remaining on the contract, then the total would approximate the damages figure actually awarded.

■ Because the verdict is justifiable under this view of the evidence, defendant has failed to establish that it was prejudiced by the trial court's refusal to instruct the jury on offer and acceptance under California law. If defendant had desired assurances regarding the theory of recovery, interrogatories could have been requested. V.R.C.P. 49(b). Accordingly, defendant's assignment of error on this ground need not be considered further.

## IV.

■ Defendant also argues that the trial court erred in refusing to instruct the jury on the law of fiduciary duty.[5] We disagree.

Defendant's third count in the counterclaim, entitled "Breach of Fiduciary Duty," stated the following: "In converting Rutherford Hill's monies to its own use, Vineyard Brands has breached its obligation of good faith, loyalty and honesty required by its fiduciary obligation to Rutherford Hill." Defendant requested damages of $134,274.56, the amount plaintiff allegedly owed defendant on account, plus interest, as well as consequential and punitive damages.

At a bench conference on the fourth day of trial, counsel for plaintiff made an oral motion for a directed verdict on defendant's claim of breach of fiduciary duty and request for punitive damages, arguing that there had been "a total failure of proof that there was ever any fiduciary duty owed by Vineyard Brands to Rutherford Hill." The court stated that "we're going to grant your motion for a directed verdict; that is, . . . the court does not believe that the evidence in this case warrants a punitive damages claim." Although the directed verdict ruling was not appealed, the parties dispute the scope of the ruling. Defendant argues that the court addressed only the request for

---

[5] Defendant also requests a remand for the purpose of pursuing its breach of fiduciary duty claim against third-party defendant Haas. This claim, however, was dismissed by the trial court, and defendant does not appeal that ruling.

punitive damages. Plaintiff contends that the ruling disposed of the entire breach of fiduciary duty claim.

During rebuttal testimony in the waning minutes of the trial, a witness for defendant was asked how much it cost Rutherford Hill to produce a case of wine. Plaintiff's counsel objected on the ground that the question was beyond the scope of rebuttal; the court agreed but allowed the testimony in an exercise of its discretion.[6] Defendant's witness testified regarding production costs and went on to estimate how much Rutherford Hill lost on each case of unsold wine. At the charge conference, defendant stated explicitly for the first time that it sought damages for lost profits under the breach of fiduciary duty theory. Without stating its reasons, the court refused to instruct the jury on the law of fiduciary duty. We find no error in this respect.

Even assuming that the trial court's directed verdict ruling left some portion of defendant's fiduciary duty count intact, the only type of damages arguably recoverable—once the punitive damages claim was out of the case—would be for lost profits and related costs. Lost profits, however, are special damages. See *Anchorage Asphalt Paving Co. v. Lewis*, 629 P.2d 65, 70 (Alaska 1981); *Safeco Title Insurance Co. v. Reynolds*, 452 So. 2d 45, 49 (Fla. Dist. Ct. App. 1984); and *Stanford v. Owens*, 46 N.C. App. 388, 398–99, 265 S.E.2d 617, 624 (1980). Under V.R.C.P. 9(g), items of special damage "shall be specifically stated" in the pleading. Because defendant's counterclaim included no specific statement concerning lost profits or other related costs, no such damages were recoverable.

The purpose of the parallel federal rule, Fed. R. Civ. P. 9(g), on which the Vermont rule is based, is to:

> protect defendant against being surprised at trial by the extent and character of plaintiff's claim. A specific statement of special damages in the complaint will put defendant on notice and permit him to employ the discovery procedures to maximum advantage in preparing his defense to the claim for special damages.

5 C. Wright & A. Miller, Federal Practice and Procedure § 1310, at 444 (1969) [hereinafter Wright & Miller]. Defendant argues

---

[6] Plaintiff urges that the trial court abused its discretion in this regard, but we find it unnecessary to resolve this issue.

that plaintiff was put on notice of the full extent of the breach of fiduciary duty claim and that the counterclaim constituted adequate notice pleading under V.R.C.P. 8(a). We observe that the pleading made no reference whatsoever to lost profits or related costs. In fact, the "Breach of Fiduciary Duty" count of the counterclaim was couched specifically in the language of conversion, alleging that the fiduciary duty had been breached by plaintiff's conversion of defendant's monies, i.e., the $132,716.03 owed on account. Rule 9(g), moreover, stands as an exception to the permissive pleading policies of Rule 8. 5 Wright & Miller § 1311, at 447.

Finally, defendant contends that the trial court should have given the requested jury charge on the basis of V.R.C.P. 15(b), which provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Defendant points out that testimony regarding lost profits was admitted at trial and that plaintiff's objection to the testimony was not made on the ground of inadequate pleadings. Citing *Lemnah v. American Breeders Service, Inc.*, 144 Vt. 568, 482 A.2d 700 (1984), defendant argues that the issue was tried by implied consent.

In *Lemnah*, this Court considered a breach of contract case in which the defendant relied upon a contractual provision allowing termination without notice if the plaintiff did not make timely payments. The plaintiff argued that the provision had been waived through the defendant's consistent acceptance of late payments. The defendant countered with the proposition that waiver must be affirmatively pleaded. We noted that the plaintiff had introduced evidence of waiver at trial without an objection from the defendant as to its relevance and that the defendant had not raised the issue of the adequacy of the pleadings until after the plaintiff had rested his case. We invoked Rule 15(b) and held that the defendant had relinquished any challenge based on inadequacy of the pleadings. *Id.* at 577–78, 482 A.2d at 706.

Closer examination of *Lemnah*, however, reveals that our holding was largely based on the notice pleading concepts of Rule 8(a), which we have already noted are inapplicable here. The opinion explicitly relies upon the rule and refers repeatedly

to the fact that the defendant had notice of the plaintiff's theory of the case. Under the particular circumstances present in *Lemnah*, we implied that the defendant could not have known plaintiff's theory of the case without also knowing that waiver would be argued. *Id.* at 577–78, 482 A.2d at 705–06.

Here, in contrast, at the point that the objectionable testimony was offered, plaintiff had received no notice whatsoever that defendant claimed lost profits or related damages. When these alleged damages were finally brought to the court's attention at the subsequent charge conference, plaintiff's counsel said, "That's the first time I've heard any of that," and the court immediately refused to instruct the jury regarding such damages. In fact, it appears that plaintiff's counsel reasonably believed that the breach of fiduciary duty claim itself was no longer at issue because of the court's earlier directed verdict ruling.

 With respect to Fed. R. Civ. P. 15(b), the Ninth Circuit has stated that:

> While it is true that a party's failure to object to evidence regarding an unpleaded issue may be evidence of implied consent to a trial of the issue, it must appear that the party understood the evidence was introduced to prove the unpleaded issue.

*Campbell v. Board of Trustees of Leland Stanford Junior University*, 817 F.2d 499, 506 (9th Cir. 1987); see also *Niedland v. United States*, 338 F.2d 254, 258 (3d Cir. 1964) (nonobjecting party must be fairly apprised that the evidence went to the unpleaded issue); 5 Wright & Miller § 1493, at 462 ("Implied consent . . . seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial.").

 Consistent with our adherence to principles of fair notice, see *Lemnah*, 144 Vt. at 577, 482 A.2d at 705, we adopt the rule stated in *Campbell*. In the instant case, it does not appear that plaintiff understood that the testimony at issue was introduced to prove a claim for lost profits. We hold that the question was not tried by consent. Therefore, the provisions of Rule 15(b) cannot cure defendant's failure to plead special dam-

ages and recovery on those items is barred.[7] See 5 Wright & Miller § 1312, at 451. It follows that, because defendant could recover neither lost profits nor punitive damages under its breach of fiduciary duty theory, the trial court did not err in refusing to instruct the jury on that theory.

*Affirmed.*

---

[7] Defendant also argues that, if plaintiff had made a proper objection to the evidence of lost profits, then defendant would have had an opportunity to amend its pleadings. We observe that a party to litigation may seek leave to make such an amendment at any time, without limitations based on the actions or inactions of the opposing party. V.R.C.P. 15(b).