**STATE OF VERMONT**
**SUPERIOR COURT — ENVIRONMENTAL DIVISION**

|  |  |  |
|---|---|---|
| | { | |
| **Williamson Building Permit Application** | { | **Docket No. 248-12-09 Vtec** |
| **Williamson NOV** | { | **Docket No. 184-11-10 Vtec** |
| **Williamson Belfry Application** | { | **Docket No. 185-11-10 Vtec** |
| **Town of Georgia v. Williamson** | { | **Docket No. 14-2-11 Vtec** |
| **Williamson Third Tier Application** | { | **Docket No. 55-4-12 Vtec** |
| | { | |

*ALTERED*[1]
### Decision on Motion to Approve and Enforce Settlement Agreement

*This decision was originally issued on November 1, 2012. The Court has been considering these five (5) individual matters in a coordinated manner pursuant to Vermont Rules for Environmental Court Proceedings Rule 2(b). In response to a recent motion filed by the Town of Georgia, the parties dispute whether this decision is a final decision in any of these matters. To clarify and bring certainty to this question, we alter the format of this decision. The conclusions of this decision remain unchanged.*

The Town of Georgia (Town) filed a motion to approve and enforce a settlement agreement executed on March 15, 2011 between the Town and Michael Williamson (Applicant). Parties reached the settlement agreement after this Court ordered them to mediate the issues involved in three appeals then pending, Docket Nos. 248-12-09 Vtec (Williamson Building Permit Application), 184-11-10 Vtec (Williamson NOV), and 185-11-10 Vtec (Williamson Belfry (Tower) Application). These disputes relate to construction involving a camp, deck, and tower[2] on Applicant's property. Applicant opposes the motion to approve and enforce, claiming that the settlement agreement became null and void under its own terms when he failed to fulfill one of its provisions.

In this proceeding, the Town is represented by Amanda S. E. Lafferty, Esq. and Applicant is represented by Michael S. Gawne, Esq.

### Factual Background

For the sole purpose of putting the pending motion in context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

---

[1] The altered portions of this decision are shown in italics and strikethrough text.
[2] Parties use the terms "tower" and "third tier" interchangeably in their briefs. As parties capitalize the word "Tower," we follow that practice in the remainder of this decision.

1. On March 15, 2011, as a result of a court-ordered mediation, the parties reached an agreement, which they articulated in a document entitled "Settlement Agreement" (Agreement) and filed with this Court. (Settlement Agreement, filed Mar. 23, 2011.) Both parties and their respective attorneys signed the Agreement. The mediation itself occurred on February 16, 2011.

2. The Agreement resolved "all issues arising out of or related to" three appeals then pending before the Environmental Division: Docket Nos. 248-12-09 Vtec (Williamson Building Permit Application), 184-11-10 Vtec (Williamson NOV), and 185-11-10 Vtec (Williamson Tower Application). Agreement at 1. The parties stipulated that that the Environmental Division would stay[3] all pending cases in accordance with the agreement. Agreement at 1, ¶ 2.

3. Among other terms, the Agreement required Applicant to confirm that the property at issue was above the flood plain by obtaining a Letter of Map Amendment (LOMA) from the Federal Emergency Management Agency (FEMA). Agreement at 1, ¶ 3. The Agreement states that if Applicant failed to file the LOMA with the Town by May 16, 2011, "the stay shall be lifted and this Agreement shall be null and void." Id.

4. Paragraph 4 of the Agreement outlines steps necessary to secure a permit for the proposed camp and deck; it notes that the Agreement separately addresses issues relating to the proposed Tower. Agreement at 2–3, ¶ 4.

5. Applicant did not obtain and file a LOMA by May 16, 2011, but prior to May 16, 2011, he initiated discourse with the Town about extending the deadline. In consultation with the Town, he eventually submitted a Letter of Map Revision based on Fill (LOMR-F) in lieu of a LOMA,[4] and on November 1, 2011 the Administrative Officer granted the permits referenced in paragraph 4.

6. Paragraph 4 of the Agreement concludes, "If the Administrative Officer issues such a permit or permits, and the permit is not appealed, then this Agreement shall become binding and enforceable." Agreement at 2, ¶ 4.

7. Paragraph 5 of the Agreement provides:

---

[3] The Agreement uses the term "stay" to refer to putting litigation on hold, but it is the practice of this Court to use the term "continuance" for such situations. We apply the term "stay" in the context of delaying the implementation of an act or decision of a decision-making body or a prohibition on an applicant taking actions to further a contested development.

[4] Applicant obtained a LOMA and sent it to the Town on May 31, 2011, but FEMA subsequently rescinded it on June 7, 2011. Shortly thereafter, Applicant initiated contact with the Town and suggested the substitution of a LOMR-F for the LOMA.

In full settlement of all claims by either party for damages, attorney's fees, costs of litigation, or fines related to the construction of the Camp, Deck[,] and/or Tower accruing up to the date of this Agreement, twenty days after the issuance of a permit and passage of the appeal period[5] described in paragraph 4, [Applicant] shall pay to the Town the sum of Seven Thousand Dollars. On that date, <u>Williamson Building Permit Application</u>, Docket No. 248-12-09 Vtec and <u>Williamson Tower Application</u>, 185-11-10 Vtec shall be dismissed by stipulation of the Parties.

Agreement at 2, ¶ 5.

8. Paragraph 6 of the Agreement outlines a separate process for resolving the Tower permit dispute. It provides, among other things, that should the Town deny the Tower approval, then Applicant may appeal that denial; if the denial is ultimately affirmed, then any related fines would accrue beginning from the date of the settlement agreement.

9. During the period of time when Applicant and the Town communicated regarding potential deadline extensions and substitutes for the LOMA, Applicant began inquiring "whether the Town would be willing to reduce the fine" in the Agreement. (Applicant's Mem. in Opp'n to Mot. to Approve and Enforce Settlement Agreement at 2, filed July 19, 2012.) Despite repeated requests, the Town consistently declined to reduce the fine.

10. By its appeal to this Court, the Town alleges that Applicant has failed to pay $7,000 to the Town as per paragraph 5 of the Agreement.

### Discussion

Pending before the Court is the Town's motion to approve and enforce the Settlement Agreement executed after court-ordered mediation in March 2011. The Town argues that the Agreement was an arms-length transaction fully executed by both parties and their attorneys, and that Applicant's failure to submit a LOMA by May 16, 2011 does not void the Agreement, because the Town accepted Applicant's late submission of a substitute LOMR-F and ultimately approved the permits. Because we conclude that the Agreement is enforceable and that Applicant's failure to pay the agreed-upon fines constitutes a breach, we **GRANT** the Town's motion to approve and enforce the Agreement.

---

[5] This refers to a portion of the Agreement outlining what would happen in the event that a person other than the Agreement's signatories appealed any eventual decision to issue the permit. No third party appealed the Town's decision in this case.

3

**I.      Whether the Settlement Agreement is Enforceable or Null and Void**

The question before the Court is whether the Agreement in its entirety became null and void upon Applicant's failure to submit a LOMA by May 16, 2011.  The facts and circumstances in this case suggest that the Agreement did not become void because the Town's actions in accepting a late LOMR-F in place of the LOMA constituted a mere waiver of the timing and form for flood plain certification.  The rest of the Agreement remains intact and enforceable.

It is by now axiomatic that "[w]here there is a covenant to perform a certain thing at a certain time, if performance of another thing, or performance at a different time, be accepted in lieu of the other, it is an answer to an action for the nonperformance of the thing stipulated." Porter v. Stewart, 2 Aikens, 417, 427 (1828).  Waiver is "the voluntary relinquishment of a known right." North v. Simonini, 142 Vt. 482, 485 (1983).  Waiver occurs where one party in an executory contract continues performance under the contract knowing that the other party has failed to perform under the term.  Lemnah v. Am. Breeders Serv., Inc., 144 Vt. 568, 578–79 (1984).  It may be express or manifested by conduct.  Id. at 579.  Waiver requires no new consideration.  Bates v. German Commercial Accident Co., 87 Vt. 128, 128 (1913).  Here, the disputed clause required Applicant to certify that the property at issue was above the flood plain.  For this certification, the Town accepted a late LOMR-F in place of the LOMA originally due by May 16, 2011.  This conduct manifested an intent to waive the deadline for—and specific form of—FEMA's flood plain certification.

Of course, waiver is a concept that usually arises as a <u>defense</u> where a party waives a provision then subsequently seeks to enforce it.  The defense is based upon the principle that it would be fraud to allow one party to mislead the other by giving the impression that it had waived a provision of the contract, then later seeking to enforce that very provision.  See In re Delligan's Estate, 111 Vt. 227, 288 (1940).

Here, however, it is not the Town that seeks to hold Applicant to the LOMA provision that it waived; rather, it is the <u>Applicant</u> who seeks to use his technical breach of the LOMA provision to declare the agreement null and void.  Applicant argues that, "[w]hile the parties have attempted to reach a substitute settlement agreement whereby a LOMR-F [would be] submitted to the Town by October 31, 2011, they never reached an agreement."   Id. at 5.

Applicant emphasizes that he "never procured a LOMA, much less by May 16, 2011," and he therefore maintains that the Agreement is null and void by its own terms. Id.[6]

Waiver may be express or manifested by conduct. Applicant admits that he "eventually submitted to the Town a copy of a LOMR-F (in lieu of a LOMA), and the Town granted the approvals identified in Paragraph 4 of the Settlement Agreement." (Applicant's Mem. in Opp. to Mot. to Approve and Enforce Settlement Agreement at 4, filed July 19, 2012.) Paragraph 4 of the Agreement states that if the Town issues the permits identified in that paragraph, "then this Agreement shall become binding and enforceable." Agreement at 2, ¶ 4. We regard the Town's conduct in issuing the permits referenced in paragraph 4 of the Agreement as the clearest possible manifestation that the Town accepted the late LOMR-F in lieu of the LOMA, regardless of whether the parties memorialized this waiver in writing.

Just as in a typical waiver-as-a-defense situation it would be wrong to allow one party to mislead the other by waiving a contractual provision then later enforcing the same, here it would be wrong to allow Applicant to enjoy the permits that the Town issued after waiving the details of the LOMA provision, then use the technical breach of that very provision as grounds for voiding the Agreement and escaping payment of agreed-upon fines. The Town could and did waive the technical details of the FEMA flood plain certification in issuing the permits in paragraph 4 of the Agreement. The rest of the Agreement remains intact and enforceable.

## II.    Review for Unconscionability

The parties do not dispute that this Court has jurisdiction to enforce the Agreement, the underlying appeals for which are still pending on our docket. See Petition of Telesystems Corp., 148 Vt. 411, 412–13 (1987) (determining that a trial court has jurisdiction to enforce a settlement agreement in an action still pending and active on the court's docket, even when the terms of the agreement are not yet incorporated into an order). Before doing so, however, a trial court retaining jurisdiction must review the terms of the settlement agreement so as to

---

[6] In his supplemental reply brief, Applicant states, "[W]hile the parties attempted to reach a new settlement agreement whereby the Town would agree to accept a LOMR-F in lieu of a LOMA and to extend the date of its procurement, [Applicant] also wanted the Town to reduce, if not eliminate, the fine. Since the Town was unwilling to do so, a new agreement was never reached." Applicant's Supplemental Mem. In Opp. To Mot. To Approve and Enforce Settlement Agreement at 1, filed August 10, 2012.) (emphasis added). The fact that the Town agreed to waive the technical requirements of the flood plain certification but did not additionally agree to modify an essential term of the contract by reducing or eliminating the agreed-upon fee is immaterial.

5

"minimize the possibility that unconscionable terms of settlement are accorded the force and effect of a judgment order." Id. at 413.

The proper inquiry for unconscionability is whether there exists evidence of "overreaching on the part of one of the parties such as that which results from an inequality in bargaining power or under other circumstances in which there is an absence of meaningful choice . . . together with contract terms which are unreasonably favorable to that party." Maglin v. Tschannerl, 174 Vt. 39, 45–46 (2002). Although Applicant's opposition memorandum recounts his efforts to convince the Town that the agreed-upon fine was too high, he does not allege that the fine provision—or any other provision of the Agreement—rises to the level of unconscionability. We have completed our own review of the Agreement, and we cannot find any terms that could be deemed unconscionable. Even if Applicant could have obtained more favorable settlement terms, basic principles of contract law forbid us—absent a showing of unconscionability—from remaking parties' contracts. See Grievance of Graves, 147 Vt. 519, 523 (1986) (the court must interpret, rather than remake or ignore, contract language). Both parties were represented by counsel at the mediation. They signed the agreement a month after the mediation, leaving ample time to review its terms. We regard the agreement as conscionable and enforceable. We therefore **GRANT** the Town's motion to approve the settlement agreement.

### III.     Whether Applicant Breached the Settlement Agreement

Paragraph 5 of the Agreement states:

> In full settlement of all claims by either party for damages, attorney's fees, costs of litigation, or fines related to the construction of the Camp, Deck[,] and/or Tower accruing up to the date of this Agreement, twenty days after the issuance of a permit and passage of the appeal period described in paragraph 4, [Applicant] shall pay to the Town the sum of Seven Thousand Dollars.

Agreement at 2, ¶ 5. Over 20 days have passed since the Town issued the permit described in paragraph 4 of the Agreement, the period for appeals by third parties expired without any such appeal, and Applicant has not paid the $7,000 fine. Applicant therefore breached the Agreement. As noted in footnote 4 above, the Agreement provides a separate process for resolving the dispute related to the Tower. See Agreement at 3, ¶ 6.

6

## Conclusion

For the reasons detailed above, we **GRANT** the Town's motion to approve and enforce the parties' Settlement Agreement. We conclude that the Town's waiver of the technical requirements of the FEMA floodplain certification leaves the remainder of the Settlement Agreement binding upon the parties, and we approve the Agreement's terms as conscionable. Pursuant to the parties' Settlement Agreement, Applicant shall pay to the Town the sum of Seven Thousand Dollars within twenty days of the date of this decision. ~~Once this payment is made, the parties may timely file a stipulation for dismissal of the matters indicated in paragraph 5 of the Agreement.~~

*Based on the terms of the Settlement Agreement, the following two (2) matters are hereby* **DIMISSED**: *Williamson Building Permit Application, Docket No. 248-12-09 Vtec and Williamson Tower Application, 185-11-10 Vtec. A Judgment Order accompanies this Decision and this decision completes all proceedings in these two matters.*

*A hearing has been previously noticed in Williamson Third Tier Application, Docket No. 55-4-12 Vtec. The hearing is scheduled for May 14, 2013, to take place in the Vermont Superior Court, Franklin Civil Division, St. Albans, Vermont. This hearing is limited to this single matter. The other two matters remaining before the Court, Williamson NOV, Docket No. 184-11-10 Vtec and Town of Georgia v. Williamson, Docket No. 14-2-11 Vtec are hereby placed on inactive status to await the outcome of the proceedings in Williamson Third Tier Application, Docket No. 55-4-12 Vtec.*

Done at Burlington, Vermont this 13th day of March, 2013.

Thomas G. Walsh,
Environmental Judge